IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| NELSON GOMES, individually, derivatively and on behalf of all others similarly situated,<br><br>                            Plaintiff,<br><br>v.<br><br>AMERICAN CENTURY COMPANIES, INC.; AMERICAN CENTURY GLOBAL INVESTMENT MANAGEMENT, INC.; JAMES E. STOWERS, JR.; JAMES E. STOWERS, III; JONATHAN S. THOMAS; THOMAS A. BROWN; ANDREA C. HALL; DONALD H. PRATT; GALE E. SAYERS; M. JEANNINE STRANDJORD; TIMOTHY S. WEBSTER; WILLIAM M. LYONS; ENRIQUE CHAN; MARK KOPINSKI; AND BRIAN BRADY,<br><br>                            Defendants,<br><br>AMERICAN CENTURY WORLD MUTUAL FUNDS, INC., doing business as AMERICAN CENTURY INTERNATIONAL DISCOVERY FUND,<br><br>                            Nominal Defendant. | Case No. 4:10-cv-00083-SOW |

**INSTITUTIONAL DEFENDANTS' SUGGESTIONS
IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S
<u>VERIFIED DERIVATIVE AND CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1
STATEMENT OF THE FACTS ............................................................................................... 2
    I.     The Parties ........................................................................................................... 2
    II.    Plaintiff's Allegations .......................................................................................... 3
    III.   Procedural History .............................................................................................. 4
    IV.   Similar Actions by Plaintiff's Counsel ................................................................ 4
ARGUMENT ............................................................................................................................. 7
    I.     Legal Standard .................................................................................................... 7
    II.    Plaintiff's Direct Claims Should Be Dismissed Because Any Alleged
          Injury Is Derivative, Not Direct .......................................................................... 7
          A.    Claims for Diminution in Value to Corporate Assets Due to
                Managerial Misconduct Must Be Brought Derivatively ............................ 7
          B.    Claims Under RICO for Diminution in Value to Corporate Assets
                Must Be Brought Derivatively .................................................................. 11
          C.    ACWMF's Status as a "Series" Fund Does Not Alter this Analysis ....... 11
    III.   Plaintiffs' Derivative Claims Should be Dismissed Because He Fails
           Sufficiently to Plead Demand Futility ................................................................ 12
CONCLUSION ....................................................................................................................... 13

# TABLE OF AUTHORITIES

Page

**CASES**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ..................................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................... 7

*Brennan v. Chestnut*,
   973 F.2d 644 (8th Cir. 1992) .......................................................................................... 11

*Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*,
   528 F.3d 1001 (8th Cir. 2008) ........................................................................................ 11

*Detroit Gen. Ret. Sys. v. Medtronic, Inc.*,
   621 F.3d 800 (8th Cir. 2010) ............................................................................................ 7

*Flynn v. Merrick*,
   881 F.2d 446 (6th Cir. 1989) .......................................................................................... 11

*Gamoran v. Neuberger Berman Mgmt., LLC*,
   No. 10 Civ. 6234 (S.D.N.Y. May 11, 2011) .................................................................... 6

*Hartsel v. Vanguard Group, Inc.*,
   No. 5394-VCS, 2011 WL 2421003 (Del. Ch. June 15, 2011) .............................. 6, 10, 11, 12

*In re Mutual Funds Inv. Litig.*,
   519 F. Supp. 2d 580 (D. Md. 2007) ............................................................................... 12

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*,
   No. Civ. RDB 05-841, 2005 WL 2989343 (D. Md. Nov. 3, 2005) ................................ 10

*Mathers v. Wright*,
   636 F.3d 396 (8th Cir. 2011) ............................................................................................ 7

*McBrearty v. Vanguard Group, Inc.*,
   No. 08-cv-7650, 2009 WL 875220 (S.D.N.Y. April 2, 2009) .......................................... 4

*McBrearty v. Vanguard Group, Inc.*,
   353 F. App'x 640 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 3411 (2010) ......................... 5

*McDonnell Douglas Corp. v. Danforth*,
   742 F. Supp. 1043 (E.D. Mo. 1990) ................................................................................. 8

*Potter v. St. Louis-San Francisco Ry. Co.*,
    622 F.2d 979 (8th Cir. 1980) ............................................................................................. 7

*Pritchard v. Myers*,
    197 A. 620 (Md. 1938) ..................................................................................................... 9

*R & K Lombard Pharm. Corp. v. Medicine Shoppe Int'l, Inc.*,
    No. 4:07-CV-288 (CEJ), 2008 WL 648509 (E.D. Mo. 2008) ....................................... 8

*Rand v. Anaconda-Ericsson, Inc.*,
    794 F.2d 843 (2d Cir. 1986) ........................................................................................... 11

*Seidl v. American Century Cos., Inc.*,
    713 F. Supp. 2d 249 (S.D.N.Y. 2010) ..................................................................... passim

*Seidl v. American Century Cos., Inc.*,
    No. 08-cv-04117 (N.D. Cal. Oct. 8, 2008) ..................................................................... 4

*Seidl v. American Century Cos., Inc.*,
    No. 10-2313-CV, 2011 WL 2417319 (2d Cir. June 17, 2011) ..................................... 5

*Shenker v. Laureate Educ., Inc.*,
    983 A.2d 408 (Md. 2009) ............................................................................................ 8, 9

*Strougo v. Bassini*,
    282 F.3d 162 (2d Cir. 2002) ........................................................................................ 8, 9

*Stutzka v. McCarville*,
    420 F.3d 757 (8th Cir. 2005) .......................................................................................... 5

*Tafflin v. Levitt*,
    608 A.2d 817 (Md. Ct. Spec. App. 1992) ................................................................... 7, 8

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ..................................................................................... 10, 11

*Waller v. Waller*,
    49 A.2d 449 (Md. 1946) ................................................................................................. 9

*Wodka v. Causeway Capital Mgmt. LLC*,
    No. 09-56733, 2011 WL 1837698 (9th Cir. May 16, 2011) ......................................... 6

*Wodka v. Causeway Capital Mgmt. LLC*,
   No. 09-cv-02625 (C.D. Cal. Oct. 8, 2009) ................................................................................6

**STATUTES**

18 U.S.C.
   § 1955 ........................................................................................................................................3
   §§ 1961 *et seq.* (2000) ...............................................................................................................1

Md. Corp. Code
   § 2-208.2 ..................................................................................................................................12
   § 2-405.1 ....................................................................................................................................9

MO. REV. STAT.
   § 351.582(3) ...............................................................................................................................7

Unlawful Internet Gambling Enforcement Act of 2006 ..................................................................3

**RULES**

Federal Rule of Civil Procedure
   12(b)(6) ..................................................................................................................................1, 7
   23.1 ..........................................................................................................................................12

Pursuant to Fed R. Civ. P. 12(b)(6), defendants American Century Companies, Inc. ("ACC"), American Century Global Investment Management, Inc. ("ACGIM"), and American Century Investment Management, Inc. ("ACIM"), along with certain of their current and former officers and employees, James E. Stowers, Jr., James E. Stowers, III, Jonathan S. Thomas, William M. Lyons, Enrique Chang, Mark Kopinski, and Brian Brady (together, "Defendants") respectfully request that the Court dismiss Plaintiff's Verified Derivative and Class Action Complaint (the "Complaint") with prejudice.

## PRELIMINARY STATEMENT

Plaintiff's Complaint here should fare no better than a multitude of virtually identical complaints filed by Plaintiff's counsel—including others against American Century-related defendants—in actions in multiple jurisdictions across the country. Plaintiff alleges that, at some time in 2006, share prices in overseas Internet gambling companies declined because of stepped-up U.S. government enforcement efforts and that, as a result, the American Century International Discovery Fund (the "Fund") and its shareholders suffered a loss. Plaintiff brings his claims against the directors, officers and investment managers of the Fund based on the Fund's investments in two such Internet gambling companies—Bwin Interactive Entertainment AG ("Bwin") and NETeller Plc ("NETeller")—both of which were publicly traded companies. Plaintiff alleges that the mere purchase of shares of these companies—which the Fund held among many other stock holdings in its investment portfolio—resulted in a monetary loss to Plaintiff. Based thereon, Plaintiff brings direct claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. (2000), breach of fiduciary duty, and negligence, as well as derivative claims for violation of RICO, breach of fiduciary duty, negligence, and waste.

Plaintiff's counsel has brought similar claims in at least seven different courts around the country, but has yet to convince any court to embrace its theories regarding the impropriety of mutual funds investing in overseas gambling companies. Indeed, no court has agreed with any

of Plaintiff's counsel's arguments here that (i) these claims can be asserted as direct claims, (ii) demand should be excused under the demand futility doctrine, or (iii) these claims state a claim on which relief can be granted.

Likewise, Plaintiff's Complaint should be dismissed here. Plaintiff has failed to show that he has shareholder standing to bring any of his direct claims. Plaintiff alleges that his shares of the Fund suffered losses because of the Fund's investments in Bwin and NETeller. But such claims are claims for mismanagement of Fund assets and are thus the epitome of derivative claims for the simple and undeniable reason that Plaintiff is only injured (if at all) by virtue of and in direct proportion to the harm suffered to the Fund. The claims thus belong to the Fund, rather than Plaintiff, and Plaintiff must sue derivatively, if at all. The Court should thus dismiss Plaintiff's direct claims with prejudice.

Plaintiffs' derivative claims fail, as well, because Plaintiff has not adequately pled demand on the board of directors or demand futility, and the Court should thus dismiss Plaintiffs' derivative claims.[1]

## STATEMENT OF THE FACTS

### I. The Parties

Nominal Defendant ACWMF is an open-ended investment corporation, organized under the laws of the state of Maryland, with its principal place of business in Kansas City, Missouri. (Compl. ¶ 38.) The Fund is a "series offering" (as explained below) by ACWMF. (*Id.* ¶¶ 38-40.) Defendant ACGIM was a Delaware corporation that served as the investment advisor for the Fund. (*Id.* ¶¶ 44, 45.) Effective July 16, 2010, ACGIM merged into its parent company, ACIM in accordance with the laws of the state of Delaware. Defendant ACC, a Delaware

---

[1] In addition to the arguments herein, Defendants also join the arguments made in the Suggestions in Support of Motion to Dismiss Plaintiff's Verified Derivative and Class Action Complaint filed by ACWMF and defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, and Timothy S. Webster (the "Fund and Ind. Directors' Suggestions").

corporation, is the parent corporation of ACIM. The individual Defendants were the directors, officers, and portfolio managers of ACGIM and ACWMF. (*Id.* ¶¶ 46-48, 54-56.)

Plaintiff Nelson Gomes alleges that he was and remains a shareholder of the Fund. (*Id.* ¶ 37.)

## II. Plaintiff's Allegations

Plaintiff alleges that at various times between December 2004 and November 2006, Defendants caused the Fund to purchase thousands of shares of two allegedly "illegal gambling businesses," NETeller and Bwin. (*Id.* ¶¶ 65-79.) Plaintiff alleges that NETeller and Bwin are illegal gambling businesses under 18 U.S.C. § 1955 and that when the Fund purchased shares in these companies, it became an "owner" of an illegal gambling business in violation of § 1955. (*Id.* ¶¶ 3, 10, 18.)

Plaintiff alleges that on June 1, 2006, a U.S. grand jury indicted a *different* Internet gambling business, London-based BetOnSports Plc, for racketeering, mail fraud, and running an illegal gambling enterprise. (*Id.* ¶ 113.) According to Plaintiff, after the public disclosure of the indictment, Bwin's share price began to fall. (*Id.* ¶¶ 114, 137.) Plaintiff asserts that, in addition to the BetOnSports indictment, other government enforcement actions were taken, including the introduction and passage (in late September 2006) of the Unlawful Internet Gambling Enforcement Act of 2006 (the "UIGEA"). (*Id.* ¶ 94.) Plaintiff alleges that by October 2006—*i.e.*, after the passage of the UIGEA—Bwin's share price had dropped roughly 80%. (*Id.* ¶¶ 23, 80.)

Plaintiff asserts that he was "directly injured" by this loss, arguing that "[e]ach dollar lost by Defendants' investments in an illegal gambling businesses resulted in a dollar loss to the Fund portfolio and to the investors in the Fund on a *pro rata* basis." (*Id.* ¶ 25.) Plaintiff brings claims on behalf of himself and the class for violations of RICO (*id.* ¶¶ 242-56), breach of fiduciary duty (*id.* ¶¶ 257-63), and negligence (*id.* ¶¶ 264-69). Plaintiff also brings the same claims (*id.* ¶¶ 212-34) and a claim for waste (*id.* ¶¶ 235-41) on behalf of ACWMF.

### III. Procedural History

This case was first filed in the Eastern District of California, *see Gomes v. American Century Cos., Inc.,* No. 09-cv-02153 (E.D. Cal. Aug. 4, 2009), but after defendants made a motion to transfer that case to the Southern District of New York (where a significant number of similar cases were pending), Plaintiff voluntarily dismissed the case and refiled it in this Court.

### IV. Similar Actions by Plaintiff's Counsel

Plaintiff's counsel has filed a number of related actions in forums across the United States on behalf of other individuals. In late 2008, Plaintiff's counsel filed three similar actions against three different mutual fund companies, including some of the same American Century-related defendants in this pending action. *Seidl v. American Century Cos., Inc.*, No. 08-cv-04117 (N.D. Cal. Aug. 28, 2008) was filed in the Northern District of California and alleged similar claims against American Century-related defendants relating to investments in Internet gambling companies made by a different American Century mutual fund (the "Ultra Fund"). *McBrearty v. Vanguard Group, Inc.*, No. 08-cv-7650 (S.D.N.Y. Aug. 29, 2008) and *Gamoran v. Neuberger Berman Mgmt. LLC*, No. 08-cv-10807 (S.D.N.Y. Dec. 12, 2008) were filed in the Southern District of New York and alleged similar claims relating to investments in Internet gambling companies made by Vanguard and Neuberger Berman mutual funds respectively. After the *Seidl* court *sua sponte* requested briefing on the appropriateness of venue in that court (*see* Order, *Seidl*, No. 08-cv-04117 (N.D. Cal. Oct. 8, 2008)), plaintiff voluntarily dismissed her case and refiled it in the Southern District of New York, *Seidl v. American Century Cos., Inc.*, No. 08-cv-8857 (S.D.N.Y. Oct. 15, 2008), where it was related to *Gamoran* and *McBrearty*. The three cases—*McBrearty*, *Seidl*, and *Gamoran*—were all assigned to Judge Denise Cote.

On April 2, 2009, Judge Cote dismissed the *McBrearty* complaint, finding that the complaint failed to allege adequate RICO proximate causation and declining to extend supplemental jurisdiction over the state law claims. *See McBrearty v. Vanguard Group, Inc.*, No. 08-cv-7650, 2009 WL 875220, at *4 (S.D.N.Y. April 2, 2009) (a copy of the decision is attached as **Exhibit A** to the Declaration of Gordon C. Atkinson ("Atkinson Decl.") filed

herewith).² On November 23, 2009, the Second Circuit affirmed Judge Cote's ruling in *McBrearty*. *See* 353 F. App'x 640 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 3411 (2010) (a copy of the Second Circuit's order is attached as **Exhibit B** to the Atkinson Decl.).

On April 7, 2010, after plaintiff filed a second amended complaint, Judge Cote dismissed the *Seidl* action. *See Seidl v. American Century Cos., Inc.*, 713 F. Supp. 2d 249 (S.D.N.Y. 2010) (a copy of the opinion is attached as **Exhibit C** to the Atkinson Decl.). The court held that Plaintiff's counsel had conceded that plaintiff's RICO claims were controlled by the *McBrearty* decision and that such claims thus failed—as they had in *McBrearty*—for lack of RICO proximate causation. *Seidl*, 713 F. Supp. 2d at 255. The court also dismissed plaintiff's direct claims as improperly brought since they belong to the Fund and thus must be brought derivatively. *Id.* at 255-57. And the court dismissed plaintiff's derivative claims for failure to allege sufficient demand or demand futility. *Id.* at 257-62. The Second Circuit recently affirmed Judge Cote's decision on all grounds. *See Seidl*, No. 10-2313-CV, 2011 WL 2417319, at *1-4 (2d Cir. June 17, 2011) (a copy of the order is attached as **Exhibit D** to the Atkinson Decl). Furthermore, the Second Circuit found that "[t]o the extent that Seidl has not waived her [RICO proximate causation] argument, we conclude that it is without merit." *Id.* at *2.

Following Judge Cote's dismissal of *Seidl*, plaintiff in that case (a) made a demand on the board of directors of ACMF (on June 28, 2010) and (b) filed a new lawsuit against the same set of defendants, this time in the Western District of Missouri, but including only her derivative state law claims.³ *See Seidl v. Am. Century Cos.*, No. 10-cv-04152 (W.D. Mo. July 15, 2010) (Fenner, J.).

Also after the Second Circuit's decision affirming the *McBrearty* dismissal, Plaintiff's counsel filed the same state law claims against Vanguard, this time in Delaware Chancery Court.

---

² The Court may properly take judicial notice of court documents filed in the other litigations. *See Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005).

³ The Western District of Missouri thus marks the third forum in which the *Seidl* plaintiff has sued defendants on the same claims and allegations and the fourth forum in which Plaintiff's counsel has sued American Century-related defendants on similar allegations.

*See Hartsel v. Vanguard Group, Inc.*, No. 5394-VCP (Del. Ch. Apr. 7, 2010). On June 15, 2011, the Chancery Court dismissed with prejudice the *Hartsel* plaintiffs' claims against individual defendants on the ground of lack of personal jurisdiction and the remaining defendants on the grounds that (1) plaintiffs had failed to plead demand futility and (2) plaintiffs did not have standing to bring their claims for breach of fiduciary duty and negligence directly. 2011 WL 2421003, at *6-28 (Del. Ch. June 15, 2011) (a copy of the decision is attached as **Exhibit E** to the Atkinson Decl.).[4]

Finally, Plaintiff's counsel also filed a largely identical complaint in the Central District of California against Causeway Capital-related defendants. *See Wodka v. Causeway Capital Mgmt. LLC*, No. 09-cv-02625 (C.D. Cal. April 15, 2009). On October 8, 2009, after full briefing of a motion to dismiss, Judge Manuel Real dismissed the RICO claims, adopting Judge Cote's reasoning in the *Vanguard* decision and finding a lack of proximate cause. *Id.*, slip op. at 2 (C.D. Cal. Oct. 8, 2009) (a copy of the decision is attached as **Exhibit F** to the Atkinson Decl.). Wodka appealed that decision to the Ninth Circuit, which affirmed Judge Real's reasoning, dismissing that case once and for all. *See Wodka v. Causeway Capital Mgmt. LLC*, No. 09-56733, 2011 WL 1837698 (9th Cir. May 16, 2011) (a copy of the order is attached as **Exhibit G** to the Atkinson Decl.).

Plaintiff's counsel has thus sued various mutual fund-related defendants on the same general allegations in at least seven different courts around the country (and in four different courts in actions against American Century-related defendants) looking for a court to accept its legal arguments. None of those courts has yet agreed.

---

[4] Similarly, following a stipulated dismissal of the Gamoran action, Plaintiff's counsel refiled the state law claims in New York State court. *See Gamoran v. Neuberger Berman Mgmt., LLC*, No. 650966/2010 (N.Y. Sup. Ct. July 15, 2010). The Neuberger Berman defendants removed that action to the Southern District of New York, where it was dismissed by Judge Sand. *See Gamoran v. Neuberger Berman Mgmt., LLC*, No. 10 Civ. 6234 (S.D.N.Y. May 11, 2011).

ARGUMENT

I.  Legal Standard

When reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true the factual allegations contained in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Mathers v. Wright*, 636 F.3d 396, 397 (8th Cir. 2011).  However, the court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Detroit Gen. Ret. Sys. v. Medtronic, Inc.*, 621 F.3d 800, 804 (8th Cir. 2010) (internal quotation marks and citation omitted).  As the Supreme Court recently stated, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

II.  Plaintiff's Direct Claims Should Be Dismissed Because Any Alleged Injury Is Derivative, Not Direct.

Through his direct RICO and common law claims, Plaintiff seeks to recover for Defendants' alleged mismanagement of Fund assets, which Plaintiff alleges resulted in a loss in the value of Plaintiff's shares due to a loss in value of the Fund's assets.  These claims are the essence of derivative claims that must be brought on behalf of the corporation, and Plaintiff's direct claims should therefore be dismissed with prejudice.

   A.  Claims for Diminution in Value to Corporate Assets Due to Managerial Misconduct Must Be Brought Derivatively

Under Maryland law,[5] whether a claim may be brought directly focuses on the question of whether the shareholders' injury is "distinct" from that suffered by the corporation. *Tafflin v.*

---

[5] Under the "internal affairs" doctrine, Maryland law applies because ACWMF is a Maryland corporation (Compl. ¶ 38).  As a federal court adjudicating questions of state law, this Court applies the choice-of law rules of Missouri. *See Potter v. St. Louis-San Francisco Ry. Co.,* 622 F.2d 979, 981 (8th Cir. 1980).  Missouri follows the internal affairs rule, which requires the Court to apply the law of the state of incorporation to any issues relating to corporate governance.  *See* MO. REV. STAT. § 351.582(3) ("This chapter does not authorize this state to

*Levitt*, 608 A.2d 817, 820 (Md. Ct. Spec. App. 1992); *Seidl*, 713 F. Supp. 2d at 256. This question is dispositive: if "an injury [is] suffered solely by the shareholders" and not the corporation, the shareholders may sue directly. *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 425 (Md. 2009). On the other hand, "[w]hen the corporation is injured and the injury to its shareholders derives from that injury, . . . only the corporation may bring suit; there is no shareholder standing." *Strougo v. Bassini*, 282 F.3d 162, 171 (2d Cir. 2002) (applying Maryland law). In the latter case, "[t]he shareholder may, at most, sue derivatively, seeking in effect to require the corporation to pursue a lawsuit to compensate for the injury to the corporation, and thereby ultimately redress the injury to the shareholders." *Id.*

As Judge Cote recognized in *Seidl,* a case that Plaintiff Gomes concedes is "virtually identical" to this case,[6] a plaintiff does not have standing to bring direct claims for violation of breach of fiduciary duty and negligence because his alleged injuries are not distinct from injury to the corporation (here, the Fund). *See* 713 F. Supp. 2d at 256-57. Instead, his injuries are explicitly premised on allegations that Defendants mismanaged *the Fund's* assets and *the Fund's* affairs causing damage to *the Fund* by allowing the Fund to make what Plaintiff believes were imprudent or unlawful investments. (*See, e.g.*, Compl. ¶¶ 1, 23, 25-28, 63-86, 245, 253, 260-61, 267.) As with Plaintiff's RICO claims, Plaintiff is harmed only derivatively through the diminution of the value of his shares as a result of a loss to the value of the Fund's assets. *See*

---

regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state."); *R & K Lombard Pharm. Corp. v. Medicine Shoppe Int'l, Inc.*, No. 4:07-CV-288 (CEJ), 2008 WL 648509, at *3 (E.D. Mo. 2008) ("The internal affairs doctrine provides that the law of the state of incorporation should be applied to disputes regarding the internal organization of a corporation."). Plaintiff's claims for negligence, breach of fiduciary duty, and waste against directors and officers of a corporation all require Plaintiff to show that such directors and officers breached their duties of care and other fiduciary duties to the corporation and its shareholders and mismanaged corporate assets, which duties are at the heart of a corporation's internal affairs. *See McDonnell Douglas Corp. v. Danforth*, 742 F. Supp. 1043, 1047 (E.D. Mo. 1990) ("Missouri courts have held that the law of the state of incorporation must be applied to breach of fiduciary duty claims against corporate officers.").

[6] Compl. ¶ 183 ("[T]he claims in this action are virtually identical to the claims in the *Seidl* action (although they involve a different mutual fund and a different illegal gambling business) . . . .").

*Shenker*, 983 A.2d at 422-23 ("Ordinarily, a shareholder does not have standing to sue to redress an injury to the corporation resulting from directorial mismanagement."); *Waller v. Waller*, 49 A.2d 449, 452 (Md. 1946) ("It is a general rule that an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder, though the injury may incidentally result in diminishing or destroying the value of the stock."); *Strougo*, 282 F.3d at 170-71 (holding that under Maryland law a lawsuit for "ill-advised investments" injures the corporation and must be pursued derivatively).

Indeed, under Maryland law, the fiduciary duties owed to a corporation and its shareholders by its directors and officers are codified, *see* Maryland Annotated Code, Corporations and Associations ("Md. Corp. Code") § 2-405.1(a),[7] and such duties can be enforced only by the corporation, *see id.* § 2-405.1(g). As the *Shenker* court explained, "to the extent § 2-405.1 creates duties on directors such as the duty of care contained in § 2-405.1(a), those duties are enforceable only by the corporation or through a shareholders' derivative action. "983 A.2d at 426. And, while § 2-405.1(a) today codifies the fiduciary duties a director owes a corporation, the result would be the same without that statute. Prior to the 1976 adoption of § 2-405.1(a), Maryland courts had long held that a shareholder lacks standing to sue directly for mismanagement of the corporation or for injury to the corporation. *See*, *e.g.*, *Waller*, 49 A.2d at 452 ("Generally, therefore, a stockholder cannot maintain an action at law against an officer or director of the corporation to recover damages for fraud, embezzlement, or other breach of trust which depreciated the capital stock or rendered it valueless."); *Pritchard v. Myers*, 197 A. 620, 625-26 (Md. 1938) (action for directors' breach of duties in management of corporation or supervision of its affairs lies in the first instance with the corporation). As Judge Cote found in

---

[7] Section 2-405.1(a) states in pertinent part: "A director shall perform his duties as a director . . . (1) In good faith; (2) In a manner he reasonably believes to be in the best interests of the corporation; and (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances."

*Seidl*, Plaintiff's direct claims for breach of fiduciary duty and negligence belong to ACWMF under Maryland law, "and must therefore be brought through a derivative action." 713 F. Supp. 2d at 256.

The result would be the same under Delaware law, which Maryland courts look to as persuasive guidance on corporate law.[8] In *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, the Delaware Supreme Court announced a test for distinguishing whether a claim is direct or derivative, which depends "*solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" 845 A.2d 1031, 1033 (Del. 2004) (emphasis in original). If the harm is to the corporation and the recovery would go to the corporation, the claim is derivative. *Id*. To pursue a direct action, plaintiffs must demonstrate that shareholders suffered an injury "independent of any injury to the corporation," *id*. at 1038 (citation omitted) and that they would be able to "prevail without showing an injury to the corporation," *id.* at 1039.

Under the first prong of *Tooley*, Plaintiff alleges direct injury only to the Fund: a decline in the Fund's value caused by a decline in value of its investments in gambling companies. *See Tooley*, 845 A.2d at 1039. Shareholders are allegedly harmed only by virtue of and in proportion to their ownership share. As Vice Chancellor Parsons explained in *Hartsel*, which also alleged very similar facts to this suit, "any injury to Plaintiffs based on a diminution of the value of their shares is secondary and derivative to the alleged injury suffered by the Funds themselves." 2011 WL 2421003, at *18. Because Plaintiff cannot prevail *without* showing an injury to the Fund, the injury is not "independent of any alleged injury to the corporation" and the claims are therefore derivative. *Tooley*, 845 A.2d at 1039. Under the second *Tooley* prong, any recovery or

---

[8] Although Maryland courts have yet to articulate clearly a detailed test that should be applied to determine whether a shareholder claim is direct or derivative, Maryland courts have looked to Delaware law, including the direct/derivative test established in *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), as instructive. *See, e.g.*, *Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. Civ. RDB 05-841, 2005 WL 2989343, at *4 (D. Md. Nov. 3, 2005).

relief in this lawsuit would properly flow to the Fund and not to the Fund's shareholders directly. *Id.* Plaintiff would, as in *Hartsel*, only receive a *pro rata* share of any loss that the Fund would recover. *See* 2011 WL 2421003, at *19.

### B. Claims Under RICO for Diminution in Value to Corporate Assets Must Be Brought Derivatively

In the RICO context, controlling federal case law holds that unless there is direct injury to the shareholder, "[a] shareholder may not maintain an action for an injury to a corporation resulting in a diminution in the value of shares . . . ." *Brennan v. Chestnut*, 973 F.2d 644, 648 (8th Cir. 1992); *see also Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1024 (8th Cir. 2008) ("A shareholder generally may not sue on his own behalf—under Missouri law or RICO—to recover the wrongful diminution in value of his stock or to recoup his share of money taken from the corporation; such claims must generally be pursued in a shareholders derivative action."); *Flynn v. Merrick*, 881 F.2d 446, 459 (6th Cir. 1989) (holding that plaintiffs' direct RICO claims were barred because they alleged diminution in the value of their shares and explaining that "'the investors in the firm suffer when the firm incurs a loss, yet only the firm may vindicate the rights at issue'" (citation omitted)); *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986) (holding that shareholders cannot bring RICO actions "in their own names" when the legal injury alleged was the diminution in the value of plaintiffs' shares). But, as discussed above, Plaintiff does not allege a direct injury and instead alleges precisely the kind of injury under RICO that may only be brought derivatively: a loss that was incurred "to the investors in the Fund on a *pro rata* basis." (Compl. ¶ 25.) Plaintiff is harmed only derivatively through the alleged diminution of the value of his shares as a result of the loss to the Fund's assets. Plaintiff thus lacks standing to bring his RICO claims directly.

### C. ACWMF's Status as a "Series" Fund Does Not Alter this Analysis

Furthermore, shareholder standing to bring his direct RICO and common law claims is not conferred on Plaintiff by virtue of the fact that ACWMF is a "series" fund. Plaintiff alleges that he "and the members of the class suffered special injuries not suffered by shareholders in

-11-

ACWMF who were not investors in the Fund." (Compl. ¶¶ 249, 256, 263, 269.) But both Judge Cote in *Seidl* and Vice Chancellor Parsons in *Hartsel* rejected the notion that shareholders in "series" funds have standing because their interests differ from other shareholders in the funds. *Seidl*, 713 F. Supp. 2d at 257 n.9; *Hartsel*, 2011 WL 2421003, at *16-18. Vice Chancellor Parsons explained that such an argument "is wrong and inconsistent with the distinction drawn between direct and derivative claims." *Hartsel*, 2011 WL 2421003, at *18. This is because any recovery would go to the Fund and not to the shareholders of other ACWMF funds. *See, e.g.*, Md. Corp. Code § 2-208.2 (the assets and liabilities of each series are to be kept separate from the assets and liabilities of other series and of the corporation generally); *Seidl*, 713 F. Supp. 2d at 257 n.9 ("The individual series of a registered investment company are, for all practical purposes, treated as separate investment companies and therefore any recovery in a derivative suit would go to the shareholders of the Ultra Fund, not to the shareholders of ACMF's other funds."); *In re Mutual Funds Inv. Litig.*, 519 F. Supp. 2d 580, 588 (D. Md. 2007) ("[T]he SEC . . . has expressly pronounced that [for series mutual funds] each series is to be treated as a separate investment company."); *Hartsel*, 2011 WL 2421003, at *18 ("[E]ach series within a series mutual fund complex acts as a completely segregated fund in the business of investing in securities.").

### III. Plaintiffs' Derivative Claims Should be Dismissed Because He Fails Sufficiently to Plead Demand Futility

As discussed in more detail in the Fund and Independent Directors' Suggestions, which Defendants incorporate herein by reference, Plaintiff's derivative claims must be dismissed for failure to adequately plead demand futility. (*See* Fund and Ind. Directors' Suggestions at 5-14.) Under Federal Rule of Civil Procedure 23.1, Plaintiff is required to plead with particularity why demand on the board of directors of ACWMF would be futile, but Plaintiff fails to allege any facts that would support a finding of futility under Maryland law. (*See id.*)

-12-

## **CONCLUSION**

For the reasons stated above, Plaintiff has failed to state any claim as a matter of law. Defendants respectfully submit that the Verified Derivative and Class Action Complaint should therefore be dismissed with prejudice as to these claims without leave to amend.

Dated: August 15, 2011

Respectfully submitted,

BRYAN CAVE LLP

By: /s/ W. Perry Brandt
W. Perry Brandt  MO Bar. #28292
1200 Main Street, Suite 3500
Kansas City, MO 64105
(816) 374-3200
(816) 374-3300 (Fax)
perry.brandt@bryancave.com

And

Gordon C. Atkinson
COOLEY LLP
(*pro hac vice*)
101 California Street, 5th Floor
San Francisco, CA  94111-5800

Attorneys for defendants American Century Companies, Inc., American Century Global Investment Management, Inc., James E. Stowers, Jr., James E. Stowers, III, Jonathan S. Thomas, William M. Lyons, Enrique Chang, Mark Kopinski, and Brian Brady.

1180546/SF