IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| NELSON GOMES, individually, derivatively and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:10-cv-00083-SOW |
| AMERICAN CENTURY COMPANIES, INC.; AMERICAN CENTURY GLOBAL INVESTMENT MANAGEMENT, INC.; JAMES E. STOWERS, JR.; JAMES E. STOWERS, III; JONATHAN S. THOMAS; THOMAS A. BROWN; ANDREA C. HALL; DONALD H. PRATT; GALE E. SAYERS; M. JEANNINE STRANDJORD; TIMOTHY S. WEBSTER; WILLIAM M. LYONS; ENRIQUE CHANG; MARK KOPINSKI; AND BRIAN BRADY, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| AMERICAN CENTURY WORLD MUTUAL FUNDS, INC., doing business as AMERICAN CENTURY INTERNATIONAL DISCOVERY FUND, | ) ) ) ) ) | |
| Nominal Defendant. | ) | |

**SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S VERIFIED DERIVATIVE AND CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................3

    A.    Plaintiff's Direct Claims Can Only Be Asserted Derivatively ................................3

        1.    Legal Standard ...........................................................................................3

        2.    Plaintiff's Complaint Fails to Allege Direct Claims. ..................................3

    B.    Plaintiff's Derivative Claims Must Be Dismissed for Failure To Adequately Plead Demand Futility ..............................................................................................6

        1.    Legal Standard ...........................................................................................6

        2.    Plaintiff's Complaint Fails To Establish That a Majority of the Current Directors Could Not Reasonably Consider a Demand ...............................7

            a.    Service by Directors on the Boards of Multiple Related Mutual Funds Does Not Excuse Demand .....................................................8

            b.    The Directors' Responsive Pleadings in Another Case Do Not Excuse Demand ............................................................................10

            c.    Plaintiff Fails To Establish That Demand, or a Delay in Awaiting a Response to a Demand, Would Cause Irreparable Harm ..............11

            d.    Maryland Law Does Not Provide An Exception to the Demand Requirement for Alleged Exposure to Civil and Criminal Liability............................................................................12

            e.    Plaintiff Cannot Circumvent the Demand Requirement by Simply Alleging Inherently Criminal Activity..........................................14

CONCLUSION...................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**:                                                                                                              **Page:**

*In re American Int'l Group, Inc. Deriv. Litig.*, 700 F. Supp. 2d 419 (S.D.N.Y. 2010) .......6

*Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984) ............................................................12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................3

*Brennan v. Chestnut*, 973 F.2d 644, 648 (8th Cir. 1992) .....................................................5

*In re Bridge Information Sys., Inc.*, 325 B.R. 824 (E.D. Mo. 2005) ...................................3

*C. N. v. Willmar Pub. Schools*, 591 F.3d 624, 630 (8th Cir. 2010) ....................................3

*Danielewicz v. Arnold*, 769 A.2d 274 (Md. Ct. Spec. App. 2001) .................................. 3-4

*In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005) ...................7, 10

*Freuler v. Parker*, No. H-10-3148, 2011 WL 2604907 (S.D. Tex. June 30, 2011) ............6

*Hartsel v. The Vanguard Group, Inc.*, No. A 5394-VCP, 2011 WL 2421003
    (Del. Ch. June 15, 2011), *notice of appeal filed* (Del. June 17, 2011) 5, 9, 11, 13, 14

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. Civ. RDB 05-841,
    2005 WL 2989343 (D. Md. Nov. 3, 2005) .............................................................5

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991)..................................................2, 6

*In re Merrill Lynch Focus Twenty Fund Inv. Co. Act Litig.*,
    218 F.R.D. 377 (E.D.N.Y. 2003).............................................................................10

*Seidl v. American Century Cos., Inc.*, No. 10-2313-cv, 2011 WL 2417319
    (2d Cir. June 17, 2011) .................................................................................5, 9, 10

*Seidl v. American Century Cos., Inc.*, 713 F. Supp. 2d 249 (S.D.N.Y. 2010),
    *aff'd*, No. 10-2313-cv, 2011 WL 2417319 (2d Cir. June 17, 2011) 2, 9, 10, 11-12, 13

*Sekuk Global Enters. Profit Sharing Plan v. Kevenides*, No. 24-C-03-007496,
    2004 WL 1982508 (Md. Cir. Ct. May 25, 2004)....................................................12

*Shenker v. Laureate Educ., Inc.*, 983 A.2d 408 (Md. 2009).................................................4

*Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002) ..................................................................4

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004)........................5

*Waller v. Waller*, 49 A.2d 449 (Md. 1946)......................................................................... 4-5

*Washtenaw County Emp. Ret. Sys. v. Wells Real Estate Inv. Trust, Inc.*,
    No. 07-CV-862-CAP, 2008 WL 2302679 (N.D. Ga. Mar. 31, 2008) ...............7, 12

*Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2001) .....................................6-7, 9, 10-11, 13

**<u>Statutes and Rules</u>**:

18 U.S.C. § 1955.......................................................................................................................1

18 U.S.C. § 1961 *et seq.* .........................................................................................................1

Investment Company Act, § 2(a)(19), 15 U.S.C. § 80a-2(a)(19) ........................................7

Federal Rules of Civil Procedure

    Rule 8(a)..........................................................................................................................6
    Rule 12(b)(6)................................................................................................................3, 6
    Rule 23.1 ......................................................................................................................1, 6
    Rule 23.1(b)(3)................................................................................................................6

Defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, and Timothy S. Webster (the "Independent Directors") and nominal defendant American Century World Mutual Funds, Inc., doing business as American Century International Discovery Fund ("the Fund") (collectively, "Defendants"), move this Court pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 to dismiss Plaintiff's Verified Derivative and Class Action Complaint. For the reasons set forth in the following Suggestions in Support of their Motion to Dismiss, Defendants' Motion to Dismiss should be granted and Plaintiff's Complaint should be dismissed with prejudice.

## INTRODUCTION

Plaintiff has brought this action against American Century Companies, Inc. ("ACC"), American Century Global Investment Management, Inc. ("ACGIM"),[1] nominal defendant American Century World Mutual Funds, Inc. ("ACWMF"), current and former directors of ACWMF, current and former executives of ACWMF and ACC, and the portfolio managers of the Fund. (Compl. ¶¶ 38-57.) Plaintiff's claims for relief arise out of the Fund's purchase of shares in Bwin Interactive Entertainment AG ("Bwin") and NETeller Plc ("NETeller") – companies that were publicly traded on the Vienna and London Stock Exchanges, respectively. Plaintiff alleges that Bwin and NETeller were illegal gambling business under 18 U.S.C. § 1955, and that the Fund's investment in those companies' shares violated Section 1955 and constituted a predicate act under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). (Compl. ¶¶ 31-33.) Plaintiff further alleges that various common law duties were breached in connection with the purchase of Bwin and NETeller shares. (Compl. ¶ 33.) Plaintiff asserts both direct claims on behalf of a putative class of Fund shareholders and

---

[1] Effective July 16, 2010, ACGIM merged into its parent company, American Century Investment Management, Inc. ("ACIM"); Defendant ACC is the parent corporation of ACIM.

derivative claims on behalf of ACWMF under RICO and common law theories of liability, and seeks recovery for injury allegedly caused by the decline in the values of the shares of Bwin and NETeller.

The claims asserted directly on behalf of Plaintiff and the purported class are fatally flawed because, under applicable law, those claims rest solely with ACWMF, and therefore could be brought, if at all, only as derivative claims. The claims asserted derivatively on behalf of ACWMF also fail, however, because Plaintiff did not make demand on the Board of ACWMF prior to filing his lawsuit, and the Complaint does not establish under applicable law that demand is excused as futile. The purpose of the demand requirement is to afford directors an opportunity to exercise their reasonable business judgment and "waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (citation omitted). Only when demand is excused as futile can a shareholder initiate suit on behalf of the corporation. *Id*. Because Plaintiff cannot bring claims directly and because his derivative claims fail because futility cannot be established, Plaintiff's claims should be dismissed. In light of the fact that these threshold issues are fully dispositive, there is no need for the Court to address the merits of Plaintiff's claims at this time.

Indeed, claims brought by Plaintiff's counsel in another case – claims that Plaintiff describes as "virtually identical" to his claims here[2] – were dismissed on precisely these grounds. *Seidl v. American Century Cos., Inc.*, 713 F. Supp. 2d 249 (S.D.N.Y. 2010) (dismissing complaint), *aff'd*, No. 10-2313-cv, 2011 WL 2417319, at *3 (2d Cir. June 17, 2011).

---

[2] "[T]he claims in this action are virtually identical to the claims in the *Seidl* action . . . ." (Compl. ¶ 183.).

Defendants respectfully request that Plaintiff's Complaint in this case similarly be dismissed with prejudice.

## ARGUMENT

### A. Plaintiff's Direct Claims Can Only Be Asserted Derivatively.

#### 1. Legal Standard.

Plaintiff's causes of action can survive a Rule 12(b)(6) motion to dismiss for failure to state a claim only they "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a court must consider all facts alleged in the complaint as true when considering a 12(b)(6) motion, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *C. N. v. Willmar Pub. Schools*, 591 F.3d 624, 630 (8th Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

#### 2. Plaintiff's Complaint Fails to Allege Direct Claims.

Plaintiff's Sixth, Seventh, Eighth, and Ninth Claims for Relief are asserted directly on behalf of Plaintiff and the purported class. (Compl. ¶¶ 242-269.) However, for the reasons discussed below, Plaintiff lacks standing to assert his direct claims.[3] Under Maryland law,[4] the general rule is that "an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder though the injury may

---

[3] Defendants also incorporate by reference the arguments made in Section II of the Institutional Defendants' Suggestions in Support of Their Motion to Dismiss Plaintiff's Verified Derivative and Class Action Complaint.

[4] Under Missouri law, a court determining questions of corporate governance must apply the law of the state of incorporation. *See*, *e.g.*, *In re Bridge Information Sys., Inc.*, 325 B.R. 824, 830-31 (E.D. Mo. 2005) ("Missouri courts generally apply the internal affairs doctrine with respect to disputes involving the administration or governance of a corporation. … Accordingly, under the internal affairs doctrine, the applicable law … is the state law under which the corporation exists.") (citations omitted). The issue of a shareholder's standing to bring direct claims is covered by the internal affairs doctrine. *See id.* at 832 (applying internal affairs doctrine and concluding that, under Missouri [the state of incorporation] law, "the rule that a corporation only has standing to assert a claim for its direct injury prohibits any other party, either a stockholder or a creditor, from asserting that claim").

incidentally result in diminishing or destroying the value of the stock." *Danielewicz v. Arnold*, 769 A.2d 274, 283 (Md. Ct. Spec. App. 2001) (citation omitted). Whether a claim may be brought directly focuses on the question of "whether the shareholders' injury is 'distinct' from that suffered by the corporation." *Strougo v. Bassini*, 282 F.3d 162, 170 (2d Cir. 2002) (citing *Tafflin v. Levitt*, 608 A.2d 817, 820 (Md. Ct. Spec. App. 1992)). This question is dispositive: if the shareholders have suffered an injury distinct from that to the corporation, the shareholders may sue directly. On the other hand, "[w]hen the corporation is injured and the injury to its shareholders derives from that injury," "only the corporation may bring suit; there is no shareholder standing." *Id.* at 171. In the latter case, "[t]he shareholder may, at most, sue derivatively, seeking in effect to require the corporation to pursue a lawsuit to compensate for the injury to the corporation, and thereby ultimately redress the injury to the shareholders." *Id.*

Plaintiff does not have standing to bring direct claims for breach of fiduciary duty, negligence, and violation of RICO because his alleged injuries are not distinct from injury to the corporation (here, the Fund). Instead, his injuries are explicitly premised on allegations that the defendants mismanaged *the Fund's* assets and *the Fund's* affairs by allowing the Fund to make imprudent or unlawful investments. (*See, e.g.*, Compl. ¶¶ 65-66.) Plaintiff is harmed only derivatively through the diminution of the value of his shares "on a *pro rata* basis"[5] as a result of a loss to the value of the Fund's assets, and has failed to allege any direct or individual injury to himself or other shareholders. *See Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 422-23 (Md. 2009) ("Ordinarily, a shareholder does not have standing to sue to redress an injury to the corporation resulting from directorial mismanagement."); *Waller v. Waller*, 49 A.2d 449, 452 (Md. 1946) ("It is a general rule that an action at law to recover damages for an injury to a

---

[5] "Each dollar lost by Defendants' investments in an illegal gambling businesses resulted in a dollar loss to the Fund portfolio and to the investors in the Fund on a *pro rata* basis." (Compl. ¶ 25.)

4

corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder, though the injury may incidentally result in diminishing or destroying the value of the stock."); *Strougo*, 282 F.3d at 170-71 (holding that under Maryland law a lawsuit for "ill-advised investments" injures the corporation and must be pursued derivatively); *Brennan v. Chestnut*, 973 F.2d 644, 648 (8th Cir. 1992) ("A shareholder may not maintain an action for an injury to a corporation resulting in a diminution in the value of shares under RICO absent a showing of individual and direct injury to the shareholder.") (citations omitted).[6] In litigation involving claims that Plaintiff characterizes as "virtually identical" (Compl. ¶ 183), the Second Circuit recently affirmed in a summary order District Court Judge Cote's conclusion that a shareholder's claims for breach of fiduciary duty and negligence could only be asserted derivatively.[7] *Seidl v. American Century Cos., Inc.*, No. 10-2313-cv, 2011 WL 2417319, at *3 (2d Cir. June 17, 2011) (holding that "Maryland law makes clear that a shareholder may not bring a direct suit against the corporate officers or directors."). Plaintiff therefore has failed to state any direct claims. Because Plaintiff's Sixth, Seventh, Eighth, and Ninth Claims for Relief belong solely to ACWMF, Plaintiff lacks standing to assert those claims and those claims should be dismissed.

---

[6] The result is the same under Delaware law. In *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, the Delaware Supreme Court announced a test for distinguishing whether a claim is direct or derivative, depending "*solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" 845 A.2d 1031, 1033 (Del. 2004) (emphasis in original). Maryland courts have looked to Delaware law, including *Tooley*, as instructive. *See, e.g.*, *Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. Civ. RDB 05-841, 2005 WL 2989343, at *4 (D. Md. Nov. 3, 2005). The Delaware Chancery Court recently applied *Tooley* in a case (also brought by Plaintiff's counsel) involving allegations of investments in internet gambling companies substantially similar to this matter. The court, having "carefully considered Plaintiffs' arguments that [the breach of fiduciary duty and negligence counts] of their Complaint qualify as direct claims under *Tooley*, [found] they [were] without merit and h[eld] that Plaintiffs ha[d] stated derivative claims only." *Hartsel v. The Vanguard Group, Inc.*, No. A5394-VCP, 2011 WL 2421003, at *20 (Del. Ch. June 15, 2011), *notice of appeal filed*, (Del. June 17, 2011).

[7] The case filed in the District Court for the Southern District of New York and appealed to the Second Circuit Court of Appeals will be referred to as the Second Circuit *Seidl* matter to differentiate between that case and the case filed by the same plaintiff in the District Court for the Western District of Missouri.

### B. Plaintiff's Derivative Claims Must Be Dismissed for Failure to Adequately Plead Demand Futility.

#### 1. Legal Standard.

Under Federal Rule of Civil Procedure 23.1, a plaintiff asserting derivative claims must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). Pre-suit demand requirements, and the futility exceptions thereto, are governed by the law of the state of incorporation. *Kamen*, 500 U.S. at 108-09. As Plaintiff alleges, the Fund is organized under Maryland law. (Compl. ¶ 38.) Rule 23.1 imposes a higher pleading standard than required under Rule 8(a). *See*, *e.g.*, *Freuler v. Parker*, No. H-10-3148, 2011 WL 2604907, at *2 (S.D. Tex. June 30, 2011) ("Federal Rule of Civil Procedure 23.1(b), addressing pleading requirements for derivative actions, imposes a higher pleading standard than Rule 12(b)(6) . . . ."); *In re American Int'l Group, Inc. Deriv. Litig.*, 700 F. Supp. 2d 419, 430 (S.D.N.Y. 2010) ("Because Rule 23.1 requires that plaintiffs make particularized allegations, it imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6).") (citation omitted). Similarly, Maryland law requires "clear[] demonstrat[ion] in a very particular manner. . . ." *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001). Plaintiff's Complaint fails to meet this heightened standard.

Plaintiff acknowledges that he has made no demand on the Fund's board of directors and instead argues he is excused from doing so because demand would have been futile. (Compl. ¶ 160.) While demand may be excused when futile, *Werbowsky*, 766 A.2d at 144, Plaintiff's Complaint fails to allege facts that would support a finding of futility under Maryland law and

6

Case 4:10-cv-00083-SOW   Document 53   Filed 08/15/11   Page 10 of 19

thus fails to meet the requirements of Rule 23.1. Under Maryland law, the demand futility exception is:

> a very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

*Id.* Therefore, in order to meet the requirements of Rule 23.1 and Maryland law, Plaintiff must state with particularity facts showing that: (1) a demand, or delay in waiting for a response to a demand, would cause irreparable harm; or (2) a majority of the Fund's *current* directors are so personally conflicted or committed to the Fund's purchase of Bwin and NETeller shares that they could not reasonably consider a demand. Establishing futility of demand under the Maryland test is exceedingly difficult. *See, e.g., Washtenaw County Emp. Ret. Sys. v. Wells Real Estate Inv. Trust, Inc.*, No. 07-CV-862-CAP, 2008 WL 2302679, *14 n.6 (N.D. Ga. Mar. 31, 2008) (listing over a dozen cases applying *Werbowsky* and finding that demand was required).

2. Plaintiff's Complaint Fails to Establish That a Majority of the Current Directors Could Not Reasonably Consider a Demand.

During the time period at issue, the Fund board was comprised of nine directors, the majority of whom were independent directors, or were not "interested persons" as defined by Section 2(a)(19) of the Investment Company Act.[8] (Compl. ¶ 46-48 (alleging only that two of the director defendants held positions with ACGIM or its parent).) Plaintiff has failed to allege with particularity that any Independent Director was personally involved in the decision to

---

[8] The Complaint also notes that two current independent directors, who are not defendants in this action, were not directors at the time of the investment transactions at issue. (Compl. ¶ 51.) This further undermines Plaintiff's ability to establish that a majority of the *current* board is so personally conflicted or committed to the Fund's purchase of Bwin and NETeller shares such that those directors could not reasonably consider a demand. *Werbowsky*, 766 A.2d at 144.

7

Case 4:10-cv-00083-SOW   Document 53   Filed 08/15/11   Page 11 of 19

purchase Bwin or NETeller shares, or that any Independent Director received any benefit from the Fund's holdings of Bwin or NETeller. Even if Plaintiff had alleged specific facts showing that the Independent Directors and defendants James E. Stowers, JR. and James E. Stowers, III (collectively, the "Directors") personally had approved the purchase of the shares (and Plaintiff has not so alleged), "[m]ere approval of the challenged transactions . . . is not enough to excuse the failure to make a demand." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 470 (D.N.J. 2005) (citing *Werbowsky*, 762 A.2d at 143-44). Accordingly, Plaintiff has failed to allege with particularity any facts establishing that a majority of the Funds' current directors could not reasonably consider a demand.

Nonetheless, Plaintiff argues that demand is futile because: (1) the Directors have irreconcilable conflicts of interest because they owe loyalties to shareholders of different portfolio funds, Compl. ¶¶ 161-68; (2) the Directors filed responsive pleadings to other complaints filed by Plaintiff's counsel, Compl. ¶¶ 169-88; (3) a demand or delay in awaiting a response to demand would cause irreparable harm, Compl. ¶¶ 189-94; (4) the Directors "are so personally and directly conflicted that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule," Compl. ¶¶ 195-205; and (5) "the wrongdoing of which Plaintiff complains in this Complaint constitutes inherently illegal criminal activity that is *ultra vires* and a *per se* violation of the business judgment rule," Compl. ¶ 207.

      a. Service by Directors on the Boards of Multiple Related Mutual Funds Does Not Excuse Demand.

Plaintiff alleges that the Directors could not reasonably consider a demand because of the "undivided loyalty" each Director owes to the other funds that compose ACWMF. (Compl. ¶ 162.) Plaintiff essentially argues that the directors would not bring suit against ACGIM because

8

recovery for the International Discovery Fund would harm the other portfolios and their investors, investors to whom the Directors owed fiduciary duties. Plaintiff's argument fails for several reasons.

First, the *Werbowsky* test does not inquire into whether a successful suit against an investment adviser would possibly harm other mutual funds to which the directors owe fiduciary duties, but only inquires into whether "a majority of the directors are so personally and directly conflicted or committed *to the decision in dispute* . . . ." *Werbowsky*, 766 A.2d at 144 (emphasis added). Here, the decision in dispute is the Fund's investment in shares of Bwin and NETeller, not the consideration of the demand itself.

Second, Judge Cote was presented with the same arguments in the Second Circuit *Seidl* case but concluded that a potential forfeiture of the adviser's fees was insufficient to establish futility of demand. *Seidl*, 713 F. Supp. 2d at 261 ("Plaintiff fails to plead with sufficient particularity the harm that would befall the other funds if a lawsuit were brought on behalf of ACMF."). Plaintiff's counsel requested that the Second Circuit vacate Judge Cote's opinion as it related to demand futility, but the Second Circuit declined to do so. *Seidl*, 2011 WL 2417319, at *3.

Finally, the central premise of Plaintiff's argument, that service on the boards of multiple funds managed by the same adviser disqualifies directors from considering a demand, has been rejected by numerous courts considering Maryland law.[9] For example, one court concluded that, where the shareholders of one particular mutual fund brought a derivative action against the investment adviser, and where the investment adviser managed 49 funds (which in turn

---

[9] The Delaware Chancery Court, applying Delaware law, rejected the argument by plaintiff that demand was excused because directors served on multiple mutual fund boards. *Hartsel*, 2011 WL 2421003 at *22 ("Thus, as courts in other jurisdictions and in similar contexts have held previously, I hold that trustees who serve on multiple boards within the same mutual fund complex are not *per se* interested persons under the ICA, even though pursuing one fund's interests within the complex might adversely affect the complex's other funds.") (citation omitted).

9

controlled over 70 fund portfolios) on whose boards the directors sat, there was no conflict establishing futility of demand. *In re Merrill Lynch Focus Twenty Fund Inv. Co. Act Litig.*, 218 F.R.D. 377, 380-81 (E.D.N.Y. 2003). Other cases similarly have concluded that membership on multiple mutual fund boards does not excuse demand, even where the directors must bring suit against an investment adviser managing all of the funds. *See*, *e.g.*, *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451. Each case cited above involved directors for various funds managed by a single adviser. Had plaintiffs in those cases prevailed, the same harm would have befallen the investors of the other funds as the investors of the ACWMF funds managed by ACGIM. Such a result was not sufficient to establish demand futility in those cases, and Plaintiff has failed to establish why this Court should deviate from precedent.

          b.       The Directors' Responsive Pleadings in Another Case Do Not Excuse Demand.

According to Plaintiff, the fact that the Directors answered the charges of liability against them in the Second Circuit *Seidl* litigation shows that they have "already made up their minds" as to the claims in the Complaint such that pre-suit demand would have been futile. (Compl. ¶ 188.) Judge Cote rejected the argument of plaintiff in the Second Circuit *Seidl* case that the responsive pleadings filed in that case indicated that the directors had already made up their minds. *Seidl*, 713 F. Supp. 2d at 258-59. Indeed, the argument made by Plaintiff here is even less persuasive as this case involves a different mutual fund, different investments, and different portfolio managers, even if the legal arguments are substantially similar.

Plaintiff's argument that unless all directors agree with all allegations in a responsive pleading in other actions involving similar legal claims, they are *per se* "so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment

10

rule," *Werbowsky*, 766 A.2d at 144, proves too much. Were this the law, demand futility would be established in numerous cases by simply asserting the liability of the directors and forcing them to defend themselves. Furthermore, as Judge Cote stated, "even if the legal positions adopted by [the fund's] directors in this case could be interpreted as evidence of their hostility to bringing a suit on behalf of [the fund], the 'failure to make demand simply because a majority of the directors . . . would be hostile to the action' is not excused under Maryland law." *Seidl*, 713 F. Supp. 2d at 259-60 (citing *Werbowsky*, 766 A.2d at 143-44).

     c.  Plaintiff Fails to Establish That Demand, or a Delay in Awaiting a Response to a Demand, Would Cause Irreparable Harm.

Plaintiff asserts that demand, or a delay in waiting for a response to a demand, would irreparably harm the Fund. Plaintiff first argues that the Fund would be harmed irreparably because the Independent Directors' responses in the Second Circuit *Seidl* litigation foreclose the ability of the Fund to recover, should the Fund choose to bring an action for the common law violations alleged by Plaintiff. (Compl. ¶¶ 189-94.) This argument is spurious. First, even assuming that the Independent Directors had taken adverse litigation positions in the Second Circuit *Seidl* matter, it is not evident that the Independent Directors would be bound by those positions and prevented from bringing causes of action against different portfolio managers and a different investment adviser for purchases of different investments in different funds.[10] Second, although the *Seidl* plaintiff made similar arguments regarding irreparable harm in the proceedings in the Second Circuit, she subsequently made a demand, which led to an investigation by an independent committee of directors and its counsel.[11] Finally, the Complaint

---

[10] The Delaware Chancery Court considered and rejected a similar argument. *Hartsel*, 2011 WL 2421003 at *28. ("Specifically, actions taken in a previous litigation do not establish that the Board of Trustees would have opposed Plaintiffs' claims had demand been made before filing *this action*.") (emphasis in original).

[11] Judge Cote rejected the *Seidl* plaintiff's argument regarding irreparable harm, stating that "Plaintiff's argument misapprehends the nature of the irreparable harm prong of the test for demand futility under *Werbowsky* [because]

specifically seeks monetary damages, even providing the means by which those damages can be calculated. (Compl. Prayer for Relief.) However, Maryland law considers an injury or harm to be "irreparable" only where "monetary damages are difficult to ascertain or are otherwise inadequate[, and will not find irreparable harm where] Plaintiffs have failed to allege that they could not be adequately compensated for any breach through an award of money damages." *Sekuk Global Enters. Profit Sharing Plan v. Kevenides*, No. 24-C-03-007496, 2004 WL 1982508, at *4 (Md. Ct. Spec. App. May 25, 2004) (finding that Plaintiffs failed to meet first prong of *Werbowsky* test) (citations omitted); *see also Washtenaw County Employees Ret. Sys.*, 2008 WL 2302679 at *13 ("Moreover, as both the Maryland court and this court have held, the plaintiff has not established that any damages resulting from the actions complained of in this case will result in irreparable harm. The harm alleged is monetary in nature and can be compensated through monetary damages.").

     d.  Maryland Law Does Not Provide An Exception to the Demand Requirement for Alleged Exposure to Civil and Criminal Liability.

  Plaintiff also argues that demand is excused because a majority of the board of directors is purportedly so personally conflicted or committed to the Fund's purchase of Bwin and NETeller shares that they could not reasonably consider a demand because they "face a substantial risk of criminal liability . . . ." (Compl. ¶ 202.) Plaintiff has failed to allege facts from which the Court could find that Plaintiff has established that any director faces "a substantial risk of criminal liability," much less a majority of the directors. Even if Plaintiff had alleged sufficient facts to establish this assertion, his claim of futility would still fail under Maryland law. Although certain decisions applying *Delaware* law have recognized an exception

---

Plaintiff argues that irreparable harm will arise *not from having to make a demand*, but rather from the possibility that [the Fund]'s board *would accede to her demand*." *Seidl*, 713 F. Supp. 2d at 259 (emphasis in original).

to the demand requirement where there is a substantial threat of liability,[12] we have found no decision expanding the *Werbowsky* test to include such an exception under *Maryland* law, which controls here. No case applying Maryland's test has interpreted the *Werbowsky* test to include this additional exception, because the futility exception is "very limited." *Werbowsky*, 766 A.2d at 144. As the Maryland Court of Appeals stated, the demand requirement "gives the directors-even interested, non-independent directors-an opportunity to consider, or reconsider, the issue in dispute." *Id.* Permitting directors (including those who had some involvement in the challenged decision) to re-consider a challenged decision is contrary to the argument that potential liability excuses demand. Even under the more permissive Delaware test for establishing demand futility (which is not applicable here),[13] the argument that demand was excused because the directors purportedly faced a substantial likelihood of liability for violating Section 1955 through a mutual fund's purchases of shares was recently rejected by the Delaware Chancery Court. *Hartsel*, 2011 WL 2421003 at *24-27.

Moreover, evaluating whether a majority of the directors face a substantial risk of liability would require an inquiry into whether a violation of RICO or of a director's fiduciary duties actually occurred. Such an inquiry directly conflicts with the Maryland Court of Appeals' rationale for its limited exception to the demand requirement, that the test "focuses the court's attention on the real, limited, issue – the futility of a pre-suit demand – and avoids injecting into a preliminary proceeding issues that go more to the merits of the complaint. . . ." *Id.*

---

[12] Under Delaware law, reasonable doubt about disinterestedness cannot be created by "the mere threat" of personal liability for approving a questioned transaction, but instead must be based on a "substantial likelihood" of director liability. *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984), *overruled in part on other grounds*, *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).

[13] As noted by Judge Cote, "Maryland courts have found Delaware cases holding that demand was not excused are instructive because the Delaware standard is more permissive and excuses demand where Maryland would not. … Thus, if a plaintiff's allegations fail to meet the Delaware standard for demonstrating demand futility, such allegations necessarily fail the stricter Maryland standard." *Seidl*, 713 F. Supp. 2d at 260 n.15.

e. Plaintiff Cannot Circumvent the Demand Requirement by Simply Alleging Inherently Criminal Activity.

Plaintiff finally argues that demand is futile because the "wrongdoing of which Plaintiff complains in this Complaint constitutes inherently illegal criminal activity that is *ultra vires* and a *per se* violation of the business judgment rule." Maryland law does not recognize such an exception to the demand requirement, and to permit a plaintiff to avoid making demand by simply alleging that directors engaged in inherently illegal criminal activity essentially renders the demand requirement a nullity.[14]

## CONCLUSION

For the reasons set forth above, the Fund and the Independent Directors respectfully request that the Court grant their Motion to Dismiss Plaintiff's Verified Derivative and Class Action Complaint and dismiss Plaintiff's Complaint with prejudice.


Dated: August 15, 2011

Respectfully submitted,

BERKOWITZ OLIVER WILLIAMS
SHAW & EISENBRANDT LLP


By: /s/ Kurt D. Williams
    Kurt D. Williams  MO Bar # 36957
    Nick J. Kurt MO Bar # 52216
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone:  816-627-0215
    Facsimile:  816-561-1888
    Email:  kwilliams@berkowitzoliver.com

---

[14] In examining whether a potential risk of liability excused demand under the more permissive Delaware standard, the Delaware Chancery Court stated: "Plaintiffs' arguments essentially hinge on whether purchasing or owning the Challenged Securities is a crime under § 1955. Having carefully considered the allegations in the Complaint and the submissions and arguments of the parties, I am not convinced that this conduct is criminal." *Hartsel*, 2011 WL 2421003 at *25.

And

Steuart H. Thomsen (*pro hac vice*)
SUTHERLAND ASBILL &
BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: 202-383-0166
Facsimile: 202-637-3593
Email: steuart.thomsen@sutherland.com

Attorneys for Defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, Timothy S. Webster, and Nominal Defendant American Century World Mutual Funds, Inc., doing business as American Century International Discovery Fund