# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

NELSON GOMES, individually, derivatively and on behalf of all others similarly situated,

Plaintiff,

- against -

AMERICAN CENTURY COMPANIES, INC., AMERICAN CENTURY GLOBAL INVESTMENT MANAGEMENT, INC., JAMES E. STOWERS, JR., JAMES E. STOWERS, III, JONATHAN S. THOMAS, THOMAS A. BROWN, ANDREA C. HALL, DONALD H. PRATT, GALE E. SAYERS, M. JEANNINE STRANDJORD, TIMOTHY S. WEBSTER, WILLIAM M. LYONS, ENRIQUE CHAN, MARK KOPINSKI, and BRIAN BRADY,

Defendants,

- and -

AMERICAN CENTURY WORLD MUTUAL FUNDS, INC., doing business as AMERICAN CENTURY INTERNATIONAL DISCOVERY FUND,

Nominal Defendant.

Case No. 10-0083-CV-W-SOW

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO INSTITUTIONAL DEFENDANTS' MOTION TO DISMISS
### (ORAL ARGUMENT REQUESTED)

**SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD LLC**
Eric S. Johnson (MO Bar. No. 61680)
Greg Erthal (*pro hac vice*)
One Court Street
Alton, IL 62002
(618) 259-2222
ejohnson@simmonsfirm.com
gerthal@simmonsfirm.com

**HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP**
Thomas I. Sheridan, III (*pro hac vice*)
Andrea Bierstein (*pro hac vice*)
112 Madison Avenue
New York, NY 10016-7416
(212) 784-6400
tsheridan@hanlyconroy.com
abierstein@hanlyconroy.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ............................................................................................ II

PRELIMINARY STATEMENT ........................................................................................1

FACTS ......................................................................................................................3

ARGUMENT ...............................................................................................................10

PLAINTIFF MAY PURSUE DIRECT SHAREHOLDER CLAIMS ........................................10

    A.    Legal Standards ...............................................................................10

    B.    Plaintiff Suffered Independent Injury ...............................................11

    C.    A Recovery Based on Direct Claims Would Go to a Different Group of Shareholders From a Recovery Based on Derivative Claims ...............................13

    D.    For Every Wrong There Must Be an Effective Remedy ........................14

CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Hood*, 327 U.S. 678 (1946) ........................................................................................... 3, 14

*Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 ................................................... 2, 6, 15

*Burns v. Frontier II Properties Limited Partnership,* 106 S.W.3d 1 (Mo. App. E.D. 2003) ......... 7

*Ceribelli v. Elghanayan,* 990 F.2d 62 (2d Cir. 1993) ........................................................... 10, 11

*Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001 (8th Cir. 2008) ................ 10

*Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984) ............................................................. 2, 14

*DeSimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) .................................................................. 7

*Gentile v. Rossette*, 906 A.2d 91 (Del. 2006) ............................................................... 11, 13, 15

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ...................................................................... 7

*Harashe v. Flintkote Co.,* 848 S.W.2d 506 (Mo.App. 1993) ........................................................ 8

*Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (Jan. 25, 2010) (plurality) ...................... 6

*Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258 (1992) ............................................... 14

*In re National Arbitration Forum Trade Practices Litigation,* 704 F. Supp. 2d 832 (D. Minn.
    2010) ...................................................................................................................................... 6

*In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27 (Del. 2006) ............................................... 8

*Jackson v. Smith*, 254 U.S. 586 (1921) ...................................................................................... 7

*Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90, 930 (1991) ............................................... 10

*Marbury v. Madison*, 5 U.S. 137 (1803) .................................................................................... 3

*McBrearty v. Vanguard Group, Inc.*, 353 Fed. Appx. 640 (2d Cir. 2009) (summary order),
    *cert. denied*, 130 S. Ct. 3411 (June 14, 2010) ...................................................................... 2

*Metro Communication Corp. BVI v. Advanced Mobilecomm Techn., Inc.*, 854 A.2d 121
    (Del. Ch. 2004) ...................................................................................................................... 8

*Pinkerton v. United States*, 328 U.S. 640 (1946) ....................................................................... 5

*Sanabria v. United States*, 437 U.S. 54 (1978) .......................................................................... 5

*Schaaf v. Residential Funding Corp.*, 517 F.3d 544 (8th Cir. 2008) ...................................... 2, 6

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) ........................................................ 14

*Shenker v. Laureate Educ., Inc.*, 983 A.2d 408 (Md. 2009) ........................................... 10, 11, 13

*Strigliabotti v. Franklin Resources, Inc.*, 2005 WL 645529 (C.D. Cal. Mar. 7, 2005) ............... 12

*Sundermeyer v. SSM Regional Health Services*, 271 S.W. 3d 552 (Mo. 2008) (*en banc*) ............. 8

*Toner v. Baltimore Envelope Co.,* 498 A.2d 642 (1985) ............................................................. 11

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) .................................. 13

*United States v. BetOnSports Plc*, 2006 WL 3257797 (E.D. Mo. Nov. 9, 2006) ...................... 4, 7

*United States v. Pink*, 315 U.S. 203 (1942) ................................................................................ 6

*Wodka v. Causeway Capital Mgmt. LLC*, 09-56733, 2011 WL 1837698 (9th Cir. May 16, 2011) (summary order) ............................................................................................................ 2

**Statutes and Rules**

18 U.S.C § 1955(a) .................................................................................................................... 1

18 U.S.C. § 1955(b) ................................................................................................................... 1

18 U.S.C. § 1961(1)(B) .............................................................................................................. 5

18 U.S.C. § 1962(c) ................................................................................................................... 5

18 U.S.C. § 2 ............................................................................................................................. 5

Illegal Gambling Business Act of 1970, 18 U.S.C. § 1955 ......................................................... 1

Organized Crime Control Act of 1970, Pub. L. 91-452, 84 Stat. 922 ......................................... 7

Organized Crime Control Act of 1970, Pub. L. 91-452, 84 Stat. 922 (1970) ............................ 14

Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-65 ......................... 1

## PRELIMINARY STATEMENT

Plaintiff is an investor in a mutual fund. Defendants are the fund's fiduciaries who squandered millions of dollars of investors' money by causing the fund unlawfully to invest in two illegal off-shore Internet gambling businesses. They did so despite explicit prior warnings by the U.S. Department of Justice ("DOJ") – and even in the prospectus of one of the gambling companies – that the primary purpose of the gambling companies was to violate federal and state criminal laws and that the DOJ considered them to be criminal organizations. A law enforcement crackdown initially set in motion by the U.S. Attorney for the Eastern District of Missouri shut down the gambling companies' illegal U.S. operations, and they lost most of their revenue. The fund and its investors lost millions of dollars on these illegal and improper investments. Asserting claims for racketeering, negligence, breach of fiduciary duty, and waste, Plaintiff seeks recovery on behalf of himself, the fund, and his fellow investors.

Each of Plaintiffs' claims is predicated, at least in part, on the Illegal Gambling Business Act of 1970 (the "Gambling Act"), which makes it a felony to "own all or part of an illegal gambling business." 18 U.S.C § 1955(a). The entities in which Defendants invested were "illegal gambling businesses" as defined in the Gambling Act. 18 U.S.C. § 1955(b). By causing the mutual fund to own stock in illegal gambling businesses, Defendants violated § 1955(a) and the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-65 ("RICO"). They were also negligent, breached their fiduciary duties, and committed waste.

In moving to dismiss, Defendants do not dispute that the Complaint alleges facts that support valid claims for relief against each of them. Defendants' primary strategy – which focuses on a bare recitation of cases in other jurisdictions that have dismissed actions relating to other funds based either on procedural grounds that are inapplicable to this case, or law contrary

to that governing this Circuit – is intended to induce this Court to refrain from independently considering Plaintiff's claims on the merits in accordance with the law of this Circuit. What is saliently missing from Defendants' recitation, however, is that *none* of those other cases have *ever* decided the merits of Plaintiff's common law claims, or whether Defendants' investments in criminal organizations violates § 1955. Moreover, none of those cases considered whether a mutual fund investor is permitted, under the Supreme Court's reasoning in *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 536 (1984), to pursue a derivative claim without first making a pre-suit demand when the investor sues to vindicate important federal rights under RICO. These are issues to be decided *for the first time* by this – or *any* – Court.

Defendants emphasize that the Second and Ninth Circuits have issued non-precedential summary orders stating that, for RICO purposes, the investment losses were caused not by the illegal investment, but by law enforcement targeting the illegal gambling businesses.[1] Those courts view law enforcement as a superseding cause that insulated defendants from liability even though enforcement of criminal statutes was reasonably foreseeable. Plaintiff believes those rulings are inconsistent with *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008). Decisions in this Circuit strongly suggest that this Court should follow *Bridge* instead of those other cases. *See, e.g., Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 552 (8th Cir. 2008).

Institutional Defendants and Director Defendants move to dismiss separately, but they adopt each other's arguments. Institutional Defendants argue that Plaintiff may not pursue direct shareholder claims because the mutual fund was the primary victim of the wrongdoing, so any claims arising from that wrongdoing can only be pursued by or on behalf of the mutual fund.

---

[1] *McBrearty v. Vanguard Group, Inc.*, 353 Fed. Appx. 640 (2d Cir. 2009) (summary order), *cert. denied*, 130 S. Ct. 3411 (2010); *Wodka v. Causeway Capital Mgmt. LLC*, 09-56733, 2011 WL 1837698 (9th Cir. May 16, 2011) (summary order).

They make this argument even though the mutual fund is completely controlled by the wrongdoers, who have no intention of allowing the fund to sue them or their co-conspirators. Director Defendants argue that Plaintiff may not pursue derivative claims, because, according to them, it is up to the Director Defendants to decide whether the mutual fund should try to recover the losses of innocent investors – even though the Director Defendants face a significant likelihood of liability for serious misconduct, and their co-defendants appointed them to their positions and pay them substantial compensation. Putting the two sets of arguments together, the upshot, according to Defendants, is that mutual fund managers can engage in any kind of criminal misconduct they want, and there is nothing injured investors can do to hold them accountable.

As we demonstrate below, that is not the law. "It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress." *Marbury v. Madison*, 5 U.S. 137, 147 (1803). Particularly where, as here, "federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684 (1946).

In this brief, Plaintiff demonstrates that he has the right to pursue direct claims because the fund's investors suffered injury that is distinct from the injury suffered by the nominal defendant, and the managers of the nominal defendant cannot reasonably be counted on to vindicate the interests of the injured shareholders. In his separate brief responding to the Director Defendants' motion, Plaintiff explains why he also has the right to pursue a derivative action.

## FACTS

Plaintiff is a shareholder in Nominal Defendant American Century World Mutual Funds, Inc. ("ACWMF"), through its American Century International Discovery Fund (the "Fund"). Defendants, who manage the Fund, caused ACWMF to violate the law by investing in two off-

3

shore Internet gambling companies whose primary businesses constituted illegal gambling under the laws of one or more of the United States: NETeller and Bwin. (Compl. ¶ 1; *see generally United States v. BetOnSports Plc*, 2006 WL 3257797 (E.D. Mo. Nov. 9, 2006))

In making the investments, Defendants were fully aware of the illegality of the businesses in which they invested. For example, NETeller disclosed to prospective investors that approximately 88% of its $136 million in annual revenue was derived in violation of U.S. criminal laws, including § 1955. (Compl. ¶¶ 2(b) and 4) Indeed, the opportunity to share in the ill-gotten profits from those illegal businesses appears to have been the primary reason Defendants made the investments. (Compl. ¶¶ 3, 5-10)

The unlawful investments suffered significant losses following a law enforcement crackdown that began in Missouri in 2006 and included the arrests of NETeller's founders after the FBI tracked them down in the Virgin Islands.[2] (Compl. ¶¶ 1, 3, 11-17) NETeller's founders pleaded guilty and admitted that their company was an illegal gambling business within the meaning of § 1955. They and their company have since forfeited $241 million in criminal proceeds. The crackdown choked off the companies' primary source of revenue, and their shares plummeted to account for the loss of such illegal revenue. (Compl. ¶ 22-27)

In their attack on Plaintiff's right to seek redress for the loss he has suffered, Defendants invite this Court to ignore the merits. The question whether investors like Plaintiff should be permitted to pursue their claims depends to a significant extent on the nature and strength of those claims and whether the fund managers can reasonably be counted on to vindicate the rights of investors. Here, Plaintiff's claims are strong, and the likelihood that fund managers will vindicate the rights of investors is nil.

---

[2] The founders of Bwin had previously been arrested by the French authorities. (Compl. ¶ 11)

The Gambling Act "proscribes any degree of participation in an illegal gambling business, except participation as a mere bettor." *Sanabria v. United States*, 437 U.S. 54, 70 n.26 (1978). By causing ACWMF, through the Fund, to own part of two illegal gambling businesses, Defendants caused ACWMF to violate the Act. By causing ACWMF to violate the Act, Defendants themselves violated the Act – both as aiders and abettors and as conspirators.[3]

A violation of the Gambling Act is a predicate crime under RICO. 18 U.S.C. § 1961(1)(B). By causing ACWMF *repeatedly* to violate the Act, Defendants conducted the affairs of ACWMF through a "pattern of racketeering activity." 18 U.S.C. § 1962(c).

This case involves an important threshold legal issue regarding causation under RICO. Plaintiff alleges that that "[t]he government law enforcement actions, and the investment losses that followed those enforcement actions, were reasonably foreseeable and part of the risk that Defendants knowingly took when they invested in illegal gambling businesses." (Compl. ¶ 24) Therefore, "[t]he losses suffered by ACWMF and the Fund's investors were the direct, proximate, reasonably foreseeable, and natural consequence of Defendants causing ACWMF, through the Fund, to own part of an illegal gambling business." (Compl. ¶ 27)

The Second and the Ninth Circuits have issued non-precedential orders that RICO causation is lacking in cases like this because, they say, the losses at issue were directly caused not by the Defendants' illegal investments, but by the intervening actions of the government in enforcing criminal anti-gambling laws. Plaintiff respectfully submits that those rulings are wrong. A racketeer is not insulated from RICO liability by the reasonably foreseeable

---

[3] Anyone who aids or abets the commission of a crime is punishable as a principal violator. 18 U.S.C. § 2. Anyone who conspires to commit a crime is liable for the substantive crime actually committed. *Pinkerton v. United States*, 328 U.S. 640 (1946).

5

intervening actions of government officials. *See Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 656-58 (2008).

The Court of Appeals for the Eighth Circuit has yet to directly address this issue. In the context of securities fraud litigation, however, the Eighth Circuit has held that to establish causation, "the plaintiffs must plead and prove that the loss was foreseeable and caused by the materialization of the concealed risk." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 552 (8th Cir. 2008). That standard has been applied in the context of RICO in this Circuit. *In re National Arbitration Forum Trade Practices Litigation,* 704 F. Supp. 2d 832, 838 (D. Minn. 2010). The Complaint meets that standard because it was reasonably foreseeable that law enforcement would lead to the loss of Defendants' investments in criminal entities.[4] In this Circuit, a RICO chain of causation can have more than one link.

The Complaint also states common law claims for breach of fiduciary duty, negligence, and waste. Plaintiff alleges that Defendants breached their duty of care to ACWMF and its shareholders and that their breaches proximately caused injury. The negligence claim is particularly strong because Defendants' investments in illegal gambling also violated criminal statutes, including the Gambling Act and RICO. Violations of criminal statutes will support

---

[4] The Justices of the Supreme Court are divided with respect to the importance of foreseeability in determining RICO causation. *Compare Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (Jan. 25, 2010) (plurality), *with id*. at 998 (Breyer, J., dissenting). The plurality opinion in *Hemi* is not authoritative because of "the lack of an agreement by a majority of the Court on the principles of law involved." *United States v. Pink*, 315 U.S. 203, 216 (1942). Justices Breyer, Stevens, and Kennedy disagreed with the plurality on foreseeability. Justice Ginsburg concurred with the result but expressly refused to subscribe to the plurality's causation analysis. Justice Sotomayor did not participate; she had been a member of the panel that the Supreme Court reversed. It is thus entirely possible, therefore, that the views expressed in the dissent in *Hemi* represent the views of a majority of the current Court.

6

liability on the basis of negligence *per se*. *Burns v. Frontier II Properties Limited Partnership*, 106 S.W.3d 1, 3 (Mo. App. E.D. 2003).[5]

Even if Defendants did not commit a crime, a reasonable trier of fact could easily find that they failed to exercise the degree of care that a reasonably prudent person would have exercised. Unregulated gambling is contrary to the laws and public policies of all fifty states.[6] It is wrongful for one party to knowingly seek to profit from the wrongdoing of another.[7] And investing in criminal enterprises poses significant risks not associated with lawful businesses. Thus, investing in such enterprises can reasonably be said to be imprudent, particularly since such investments can only return a profit if the criminal organization successfully evades law enforcement.

Defendants also breached their fiduciary duty of loyalty. It is "utterly inconsistent with one's duty of fidelity to the corporation to consciously cause the corporation to act unlawfully." *DeSimone v. Barrows*, 924 A.2d 908, 934-35 and n.89 (Del. Ch. 2007). *Accord Guttman v. Huang*, 823 A.2d 492, 506 n.34 (Del. Ch. 2003)). Defendants breached their duty of loyalty by causing Nominal Defendant to violate § 1955 and RICO.

They also breached their fiduciary duty of good faith. "A failure to act in good faith may be shown ... where [a] fiduciary acts with intent to violate applicable positive law." *In re Walt*

---

[5] Plaintiff and ACWMF are within the class of individuals intended to be protected by the statute that Defendants violated, which is a requirement for negligence *per se*. Section 1955 and RICO were enacted together as part of the Organized Crime Control Act of 1970, Pub. L. 91-452, 84 Stat. 922. The statement of findings that prefaces that Act expressly refers to "harm to innocent investors" and the corruption of "legitimate businesses" in connection with "syndicated gambling." Plaintiff (an innocent investor) and ACWMF (a legitimate business and an innocent investor) were harmed by Defendants' investments in syndicated gambling.

[6] *United States v. BetOnSports Plc*, 2006 WL 3257797 (E.D. Mo. Nov. 9, 2006).

[7] *See Jackson v. Smith*, 254 U.S. 586, 589 (1921) (those who knowingly participate in a breach of fiduciary duty by a third party are jointly and severally liable for all profits obtained).

*Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006)). Therefore, a "fiduciary may not choose to manage an entity in an illegal fashion, even if the fiduciary believes that the illegal activity will result in profits for the entity." *Metro Communication Corp. BVI v. Advanced Mobilecomm Techn., Inc*., 854 A.2d 121, 131 (Del. Ch. 2004). Defendants failed to act in good faith when they violated § 1955 and RICO in managing the affairs of ACWMF. They also failed to act in good faith when they attempted to profit from the wrongdoing of another.

Even if Plaintiff's complaint did not allege RICO causation – which it does – it certainly pleads common law proximate causation. A defendant's negligence does not have to be the sole cause of the injury but only a substantial factor in bringing about the injury. *Harashe v. Flintkote Co.,* 848 S.W.2d 506 (Mo. App. 1993). An intervening event may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the same risk that renders the actor negligent. *Sundermeyer v. SSM Regional Health Services*, 271 S.W. 3d 552, 555 (Mo. 2008) (*en banc*).

The nominal defendant, ACWMF, is an "umbrella" investment company registered under the Investment Company Act of 1940 (the "1940 Act"). It comprises eleven separate mutual funds, each offering a separate series or class of stock to investors. Each portfolio of a series mutual fund generally has different investment objectives and policies from other funds included within its umbrella entity. The shareholders of each portfolio do not participate in the investment results of any other portfolio and must look solely to the assets of their portfolio for most purposes. Each series of stock represents a different group of stockholders with an interest in a segregated portfolio. Each separate portfolio is commonly referred to as a "fund." The Fund is one of ACWMF's eleven funds. (Compl. ¶¶ 39-40)

The various funds within ACWMF are not separate legal entities. However, they are treated as separate entities for many purposes. For example, with a few exceptions, the SEC has applied the provisions of the 1940 Act to a series fund as if the individual portfolios of that fund were separate investment companies. However, only ACWMF has a board of directors, and none of the eleven ACWMF funds has its own separate board charged exclusively with looking after its individual interests. (Compl. ¶¶ 39-40)

The contractual redemption value of investors' shares in a mutual fund is recalculated daily based on the "net asset value" of the fund's portfolio. Thus, every daily decline in the market value of the gambling stocks resulted in a reduction of the redemption value of Fund shares owned by investors like Plaintiff – even though ACWMF had not actually sold any gambling stocks and had not actually realized any loss. (Compl. ¶ 25) As a result – and unlike the situation in an ordinary corporation – the actual economic impact of the decline in value of the gambling stocks was immediately and contractually allocated to the investors in the Fund.[8] Each time that happened, investors in the Fund suffered injury that was not suffered by ACWMF.

ACWMF and its directors cannot be counted on to vindicate the rights of Fund investors. The complaint alleges that "[a]fter Plaintiff and the Fund's investors suffered injury, and in furtherance of the conspiracy alleged herein, the Directors failed to take any action to seek redress on behalf of ACWMF and the Fund's investors for the injury they suffered as a result of Defendants' wrongful actions." (Compl. ¶ 154) For a variety of reasons, any demand that the Directors vindicate investors rights "would have been futile." (Compl. ¶ 170)

---

[8] In contrast, injuries suffered by an ordinary corporation from the mismanagement of its officers do not necessarily lead to a direct decrease in the market value of its shares.

## PLAINTIFF MAY PURSUE DIRECT SHAREHOLDER CLAIMS

### A.    Legal Standards

Plaintiff's right to pursue federal statutory claims as an individual is an issue of federal law. *See Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90 (1991). His right to pursue individual common law claims is governed by state law.

Shareholders can maintain a direct action under RICO, notwithstanding the possible availability of a derivative action, as long as they can establish that they were directly injured by reason of racketeering activity. *Ceribelli v. Elghanayan,* 990 F.2d 62, 64-65 (2d Cir. 1993). Even if Plaintiff were seeking to pursue individually claims that were exclusively derivative, based on the culpability of Directors, and the unlikelihood that the rights of investors will otherwise be vindicated, this is a "case in which equity demands an exception to the derivative-standing rule." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1025 (8th Cir. 2008).

In the discussion that follows, Plaintiff focuses on Maryland law, which governs his right to pursue individual common law claims. Plaintiff is entitled to pursue his individual RICO claims for the same reasons that Maryland law permits him to pursue individual common law claims. Plaintiff would be entitled to pursue his RICO claims, however, even if he were not permitted to pursue common law claims under Maryland law.

Under Maryland law, "a shareholder may bring a direct action, either individually or as a representative of a class, against alleged corporate wrongdoers when [i] the shareholder suffers the harm directly or [ii] a duty is owed directly to the shareholder, though such harm may also be a violation of a duty owing to the corporation." *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 424 (Md. 2009). Whether "the plaintiff suffered his or her injury in common with all other shareholders is not determinative of whether the injury suffered is direct or indirect." *Id.* at 424.

Under Maryland law, officers and directors owe fiduciary duties to the shareholders of the corporation, as well as to the corporation itself. *Toner v. Baltimore Envelope Co.,* 498 A.2d 642, 648 (1985). Where, as here, "a shareholder's action is based on breach of a duty owed directly to the shareholder, a direct action may be filed against the directors." *Shenker,* 983 A.2d at 423.

Certain wrongs may give rise to *both* derivative and direct claims in favor of the same plaintiff. Only when a claim is "exclusively" derivative are direct claims precluded. *Gentile v. Rossette*, 906 A.2d 91, 94, 99-100 (Del. 2006). *See Shenker,* 983 A.2d at 424; *Ceribelli,* 990 F.2d at 64-65. Here, Plaintiff's claims are not exclusively derivative.

### B. Plaintiff Suffered Independent Injury

"Where the rights attendant to stock ownership are adversely affected, shareholders generally are entitled to sue directly, and any monetary relief granted goes to the shareholder." *Shenker*, 983 A.2d at 424. Here, the primary right attendant to Plaintiff's stock ownership is the contractual right to redeem from the Fund his *pro rata* share of the net asset value of the Fund. That right was adversely affected by Defendants' wrongdoing.

Fund investors suffered a direct injury every time the market value of the gambling stocks fell because the net asset value of the Fund – and concomitantly the contractual redemption price of their mutual fund shares – was recalculated on a daily basis. That recalculation was immediately reflected in the contractual redemption value of Plaintiff's shares. Each day that there was a negative adjustment based on a decline in the market value of the gambling stocks, Plaintiff suffered injury – a reduction in the contractual redemption value of his shares – *even though ACWMF had not yet suffered any loss at all, and might never have done so.* Furthermore, Plaintiff suffered lost profits, *i.e.*, the loss in value that his shares would have had if the Funds' portfolio had been invested in lawful investments. Plaintiff's injury as a shareholder

was entirely independent of, and took place at different times from, the injury later realized by ACWMF.[9]

In *Strigliabotti v. Franklin Resources, Inc.*, 2005 WL 645529 *8 (N.D. Cal. Mar. 7, 2005), the court, applying California law but also relying on Maryland and Delaware law, held that mutual fund investors could bring direct common law claims relating to excessive compensation and improper payments paid by the funds to the defendants in breach of their fiduciary duties. The court reasoned that a mutual fund issues redeemable securities, the value of which is computed daily. Therefore, every dollar of expense borne by the fund is distributed to shareholders as a *pro rata* deduction from the net asset value per share. As a result, harm was suffered by individual investors when excessive or improper expenses incurred by the mutual fund were passed on to them. Although *Strigliabotti* involved an allocation of expenses, its reasoning is equally applicable to the allocation of investment losses at issue here.

In their motion papers, Institutional Defendants consistently refer to *the Fund's* losses and damages, and *not* the losses or damages of the nominal defendant ACWMF. *See* Institutional Def. Suggs. at 8, 10 [Docket #51]; Director Def. Sugg. at 4 [Docket #53]. This is a telling admission, because it highlights the distinction between the injury suffered by *the Fund* and its investors as opposed to any injuries suffered by ACWMF – which is the only legal entity on whose behalf any derivative claims could be brought. ACWMF is just an "umbrella" entity under which defendant American Century Companies, Inc. aggregates various American Century mutual funds. (Compl. ¶ 39) Its primary purpose is regulatory convenience: it lends its securities registration to its constituent funds so that each fund does not have to go through the burden and

_____

[9] ACWMF did not suffer an actual loss at the time it purchased the illegal gambling stocks. At that point in time, the price of the stocks could have gone up or down. Had they gone up, ACWMF would have suffered no losses. ACWMF did not realize any actual loss until it sold the gambling stocks.

expense of registering separately with the SEC. It holds bare legal title to fund investments, which it holds for the benefit the funds for which they were purchased. It never retains any investment profits and losses; those are immediately passed on to its constituent funds and their investors. Thus, the real victims here were the investors, not the nominal defendant.

Furthermore, because of the structure of ACWMF as a "series" of eleven mutual funds, the Funds' investors are essentially a minority class of shareholders of ACWMF who share no common investment interests with the investors of the other ten series composing ACWMF. The injury suffered by the holders of the series of shares held by Plaintiff was not suffered by holders of the other ten series of shares issued by the ACWMF.[10]

Burdens inflicted on a minority class of shareholders that are not shared by the other shareholders may give rise to direct claims. In *Gentile*, the Supreme Court of Delaware held that even though a corporation suffered harm that would support a derivative action, one class of shareholders could assert direct claims because the harm to that class of shareholders resulted in a benefit to other shareholders. The principle underlying *Gentile* applies where minority shareholders are harmed without a fair distribution or "equal dilution of the economic value … of the corporation's outstanding shares." 906 A.2d at 100. Such a situation is presented here: the shareholders of the Fund suffered injury that was not shared by any other series of shareholders.

### C. A Recovery Based on Direct Claims Would Go to a Different Group of Shareholders From a Recovery Based on Derivative Claims

It is also relevant to consider "who would receive the benefit of any recovery." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004), *cited with approval in Shenker*, 983 A.2d at 424. In the event of a recovery based on Plaintiff's direct claims, any

---

[10] In an ordinary corporation, even if there are different classes of stock, at least the different classes have a common interest in the assets and liabilities of the enterprise. Here, there is no such common interest because the portfolios are segregated, and ACWMF's function primarily is regulatory filing convenience, not the pursuit of an independent business goal.

Case 4:10-cv-00083-SOW   Document 57   Filed 09/16/11   Page 17 of 21

expense of registering separately with the SEC. It holds bare legal title to fund investments, which it holds for the benefit the funds for which they were purchased. It never retains any investment profits and losses; those are immediately passed on to its constituent funds and their investors. Thus, the real victims here were the investors, not the nominal defendant.

Furthermore, because of the structure of ACWMF as a "series" of eleven mutual funds, the Funds' investors are essentially a minority class of shareholders of ACWMF who share no common investment interests with the investors of the other ten series composing ACWMF. The injury suffered by the holders of the series of shares held by Plaintiff was not suffered by holders of the other ten series of shares issued by the ACWMF.[10]

Burdens inflicted on a minority class of shareholders that are not shared by the other shareholders may give rise to direct claims. In *Gentile*, the Supreme Court of Delaware held that even though a corporation suffered harm that would support a derivative action, one class of shareholders could assert direct claims because the harm to that class of shareholders resulted in a benefit to other shareholders. The principle underlying *Gentile* applies where minority shareholders are harmed without a fair distribution or "equal dilution of the economic value … of the corporation's outstanding shares." 906 A.2d at 100. Such a situation is presented here: the shareholders of the Fund suffered injury that was not shared by any other series of shareholders.

### C. A Recovery Based on Direct Claims Would Go to a Different Group of Shareholders From a Recovery Based on Derivative Claims

It is also relevant to consider "who would receive the benefit of any recovery." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004), *cited with approval in Shenker*, 983 A.2d at 424. In the event of a recovery based on Plaintiff's direct claims, any

---

[10] In an ordinary corporation, even if there are different classes of stock, at least the different classes have a common interest in the assets and liabilities of the enterprise. Here, there is no such common interest because the portfolios are segregated, and ACWMF's function primarily is regulatory filing convenience, not the pursuit of an independent business goal.

recovery would go to the investors who were investors in the Fund at the time the injury occurred in 2006 – some of whom may no longer be shareholders. In contrast, in a derivative action, the recovery would be allocated to those who own shares in the Fund at the time of the recovery, which is a different population of investors from the group that owned shares back in 2006. Thus, permitting direct claims is a more equitable method for allocating a recovery.

**D.    For Every Wrong There Must Be an Effective Remedy**

It is also appropriate for the Court to consider what remedies are actually available to redress the wrong which has been committed. Where, as here, "federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684 (1946). This is particularly true since RICO is to "be liberally construed to effectuate its remedial purposes." Pub.L. 91-452, § 904(a), 84 Stat. 947 (1970). *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497-98 (1985). In evaluating who can sue under RICO, it is important to consider who can be "counted on to vindicate the law." *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 269 (1992). Neither Congress nor the Supreme Court has evinced any confidence that mutual fund dicrectors can be counted on to vindicate the rights of investors against the conflicting interests of the funds' management given the inherent conflicts of interest in the mutual fund industry. In *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984), the Supreme Court of the United States explained:

> unlike most corporations, an investment company is typically created and managed by a pre-existing external organization known as an investment adviser … . Because the adviser generally supervises the daily operation of the fund and often selects affiliated persons to serve on the company's board of directors, the relationship between investment advisers and mutual funds is fraught with potential conflicts of interest.

14

464 U.S. at 536. Because of the inherent conflicts associated with mutual funds, the Supreme Court in *Fox* fashioned a remedy to allow suit "on behalf of" a mutual fund to proceed without requiring that the plaintiff plead demand futility – a procedural benefit normally associated with individual claims asserted directly by shareholders.

As for Plaintiff's common law claims, *Gentile* allowed individual claims to be brought in part because an effective derivative remedy was no longer available as a practical matter. 906 A.2d at 103. Plaintiff submits that the Maryland Court of Appeals would agree that a court of equity should consider whether an effective derivative remedy is actually available.

Based on the uncontroverted allegations of the complaint, it is absolutely clear that the rights of investors will never be vindicated if the decision is left to the wrongdoers. The Defendant Directors are not going to sue themselves, and they are not going to sue those responsible for appointing them and paying them substantial salaries for sitting on the boards of ACWMF and many other funds within the American Century mutual fund complex. (Compl. ¶¶ 151-156, 169-187, 195-201) In these circumstances, Plaintiff submits that the Maryland Court of Appeals would permit Plaintiff to pursue direct common law claims, and the Eighth Circuit would permit Plaintiff to pursue direct RICO claims if only as an equitable exception to the general rule. *See Craig Outdoor,* 528 F.3d at 1025. *See also Bridge*, 553 U.S. at 658 ("no more immediate victim is better situated to sue").

### CONCLUSION

For the foregoing reasons, and for the reasons set forth in the separate suggestions filed simultaneously herewith, Plaintiff suggests that the motion to dismiss should be denied.

**Pursuant to Local Rule 7.0(g), Plaintiff respectfully requests oral argument**.

Dated:  September 16, 2011

Respectfully submitted,

Eric S. Johnson (MO Bar. No. 61680)
Gregory P. Erthal (*pro hac vice*)
**SIMMONS BROWDER GIANARIS**
**ANGELIDES & BARNERD LLC**
One Court Street
Alton, IL  62002
(618) 259-2222
jwagner@simmonsfirm.com
gerthal@simmonsfirm.com

/s/ Thomas I. Sheridan, III
Thomas I. Sheridan, III (*pro hac vice*)
Andrea Bierstein (*pro hac vice*)
**HANLY CONROY BIERSTEIN SHERIDAN**
**FISHER & HAYES LLP**
112 Madison Avenue
New York, NY 10016-7416
(212) 784-6404
tsheridan@hanlyconroy.com
abierstein@hanlyconroy.com

*Attorneys for Plaintiff*

**Certificate of Service**

I hereby certify that on September 16, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following defense counsel:

>  W. Perry Brandt
>  perry.brandt@bryancave.com
>
>  Gordon C. Atkinson
>  atkinsongc@cooley.com
>
>  Kurt D. Williams
>  kwilliams@berkowitzoliver.com,
>
>  Nick J. Kurt
>  nkurt@berkowitzoliver.com,
>
>  Benjamin Kleine
>  bkleine@cooley.com
>
>  Steuart H. Thomsen
>  steuart.thomsen@sutherland.com

I hereby certify that on September 16, 2011, I served the follwoing defense counsel by e-mail as provided in the Court's Order dated February 24, 2010:

>  Marguerite C. Bateman
>  marguerite.bateman@sutherland.com

/s/ Thomas I. Sheridan, III
Thomas I. Sheridan, III

Dated: September 16, 2011

17