# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

NELSON GOMES, individually, derivatively and on behalf of all others similarly situated,

                Plaintiff,

         - against -

AMERICAN CENTURY COMPANIES, INC., AMERICAN CENTURY GLOBAL INVESTMENT MANAGEMENT, INC., JAMES E. STOWERS, JR., JAMES E. STOWERS, III, JONATHAN S. THOMAS, THOMAS A. BROWN, ANDREA C. HALL, DONALD H. PRATT, GALE E. SAYERS, M. JEANNINE STRANDJORD, TIMOTHY S. WEBSTER, WILLIAM M. LYONS, ENRIQUE CHAN, MARK KOPINSKI, and BRIAN BRADY,

                Defendants,

         - and -

AMERICAN CENTURY WORLD MUTUAL FUNDS, INC., doing business as AMERICAN CENTURY INTERNATIONAL DISCOVERY FUND,

                Nominal Defendant.

Case No. 10-0083-CV-W-SOW

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DIRECTOR DEFENDANTS' AND NOMINAL DEFENDANT'S MOTION TO DISMISS**
**(ORAL ARGUMENT REQUESTED)**

**SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD LLC**
Eric S. Johnson (MO Bar. No. 61680)
Greg Erthal (*pro hac vice*)
One Court Street
Alton, IL 62002
(618) 259-2222
ejohnson@simmonsfirm.com
gerthal@simmonsfirm.com

**HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES LLP**
Thomas I. Sheridan, III (*pro hac vice*)
Andrea Bierstein (*pro hac vice*)
112 Madison Avenue
New York, NY 10016-7416
(212) 784-6400
tsheridan@hanlyconroy.com
abierstein@hanlyconroy.com

*Attorneys for Plaintiff*

TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................................1

FACTS ..........................................................................................................................................1

    The Merits ..........................................................................................................................1

    Any Demand on the Board Would Have Been Futile.........................................................2

        *Directors Are Conflicted Because of Their Potential Liability* ...............................2

        *Directors Have Committed Themselves to a Position on the Merits* .......................3

        *The Director Defendants Owe Conflicting Duties to Other Funds* .........................5

ARGUMENT ..................................................................................................................................7

PLAINTIFF WAS NOT REQUIRED TO MAKE A DEMAND ON THE BOARD TO BRING THIS ACTION......7

    A.      No Pre-Suit Demand Is Required When Mutual Fund Shareholders Seek to Vindicate Racketeering Injury Caused by Mutual Fund Fiduciaries........................7

    B.      To the Extent Any Demand Is Required, It Was Excused......................................9

        1.      *Demand Is Excused Because the Directors Are Conflicted Due to Their Potential Liability*..............................................................................11

        2.      *Demand Is Excused Because the Directors Previously Committed Themselves to Their Decision Not to Pursue Claims Arising from the Fund's Investments in Illegal Gambling*......................................................12

        3.      *Demand Is Excused Because the Director Defendants Owe Conflicting Duties to the Other Funds*.........................................................13

CONCLUSION...............................................................................................................................15

TABLE OF AUTHORITIES

Page

**Cases**

*Bell v. Hood*, 327 U.S. 678 (1946) .................................................................................. 9

*Booth v. Robinson*, 55 Md. 419 (1881) ......................................................................... 14

*Daily Income Fund, Inc. v. Fox,* 464 U.S. 523 (1984) ..................................................... 7

*Felker v. Anderson*, 2005 WL 602974 (W.D. Mo. Feb. 11, 2005) ......................... 12, 13

*Hartsel v. Vanguard Group*, 2011 WL 2421003 (Del. Ch. June 15, 2011), *appeal pending*, No. 306,2011 (Del. Sup. Ct.) ............................................................................. 12

*In re American Intern. Group, Inc.*, 965 A.2d 763 (Del. Ch. 2009) ............................. 10

*In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005) ................... 14

*In re Merrill Lynch Focus Twenty Fund Inv. Co. Act. Litig.*, 218 F.R.D. 377 (E.D.N.Y. 2003) ............................................................................................................ 14

*Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90, 930 (1991) ................................. 7, 8

*Marbury v. Madison*, 5 U.S. 137 (1803) ........................................................................ 9

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) .............................................. 9

*Strougo v. Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 783 (S.D.N.Y.1997) ....... 14, 15

*Werbowsky v. Collumb*, 766 A.2d 123 (Md. 2001) ..................................... 10, 11, 12, 14

*Wilkens Square, LLLP v. W.C. Pinkard & Co., Inc.*, 984 A.2d 329 (Md. App. 2009) ................ 14

## PRELIMINARY STATEMENT

Plaintiff is an investor in a mutual fund. Defendants are mutual fund fiduciaries who squandered tens of millions of dollars of investors' money by causing the mutual fund to unlawfully invest in illegal off-shore Internet gambling businesses. The Complaint states claims for racketeering, negligence, breach of fiduciary duty, and waste.

Institutional Defendants[1] and Director Defendants move to dismiss separately, but they adopt each other's arguments. Institutional Defendants argue that Plaintiff may not pursue direct stockholder claims. Director Defendants contend that Plaintiff may not pursue derivative claims. Thus, according to Defendants, mutual fund investors simply have no remedy against their fiduciaries, even though it is uncontroverted that the investors suffered millions of dollars of losses as a result of the fiduciaries' illegal attempt to profit from foreign criminal enterprises.

In these suggestions, Plaintiff responds to Director Defendants' argument that Plaintiff was required to make a pre-suit demand on the board of directors of nominal defendant ACWMF (the "Board") to bring this derivative action. Plaintiff is properly pursuing a derivative action with respect to his RICO claims because a mutual fund shareholder need not make a demand to enforce a federal remedial statute like RICO. To the extent a demand is required with respect to any of Plaintiff's claims, such a demand was excused because it would have been futile.

## FACTS

**The Merits**

For the facts concerning the merits of Plaintiff's claims, Plaintiff respectfully refers the Court to the Statement of Facts set forth in Plaintiff's Suggestions in Opposition to Institutional

---

[1] In these suggestions, Plaintiff uses defined terms consistently with his separately filed Suggestions in Opposition to the Institutional Defendants' Motion to Dismiss.

Defendants' Motion to Dismiss, filed simultaneously herewith, and to the Complaint, the allegations of which are uncontroverted.

**Any Demand on the Board Would Have Been Futile**

The Complaint alleges with particularity that a demand on the Board of ACWMF was excused as futile for several reasons. We highlight three of the reasons below.

*Directors Are Conflicted Because of Their Potential Liability*

A majority of Directors cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule because they are exposed to a substantial risk of personal liability for wrongs that constitute, among other things, crimes, bad faith, gross negligence, willful misfeasance, reckless disregard of duty, and violation of Directors' duty of loyalty. (Compl. ¶ 195) As the Complaint describes in detail, to an even greater degree than the directors of ordinary corporations, directors of a mutual fund are responsible for protecting the mutual fund's investors under a unique "watchdog" role. Directors had a duty to ensure that ACWMF did not engage in conduct that constituted a crime under state or federal law. They also had a duty to ensure that ACWMF did not invest in criminal activities and enterprises, including illegal gambling businesses. Furthermore, they had a duty to ensure that ACWMF had proper control mechanisms to ensure that it did not commit crimes or make investments in illegal gambling companies whose activities in the U.S. had caused "substantial" harm to the interests of United States and the several States, and whose illegal conduct was in violation of public policy.[2] Directors also had a duty to monitor the trading activities of the investment adviser and other investment professionals. (Compl. ¶¶ 151-153, 196-200)

---

[2] *See United States v. BetOnSports PLC*, 4:06-CV-01064-CEJ, 2006 WL 3257797, at * 9 (E.D. Mo. Nov. 9, 2006) (Jackson, *J.*).

In performing their duties, Directors received regular reports regarding the Fund's investments, and, prior to the losses complained of, they learned of the Fund's investments in illegal gambling businesses. (Compl. ¶ 154) After learning of the illegal investments, Directors participated in the conspiracy by deliberately failing to carry out their fiduciary and other legal responsibilities to halt the illegality at a time when doing so would have prevented the injury that Plaintiff and Fund's investors have suffered. After Plaintiff and the Fund's investors suffered injury, and in furtherance of the conspiracy, Directors failed to take any action to seek redress on behalf of ACWMF and the Fund's investors for the injury they suffered as a result of Defendants' wrongful actions. (Compl. ¶ 154)

The Complaint alleges that if any Director remained ignorant of the investments at issue throughout the course of the conspiracy, he or she would nevertheless be liable as if he or she had actual knowledge. Given the Directors' legal responsibilities and the reports they received, ignorance could only be the result of recklessness or willful blindness, either of which is the legal equivalent of actual knowledge. (Compl. ¶¶ 156, 201)

Based on the uncontroverted allegations of the Complaint, Director Defendants face a substantial risk of personal liability. Accordingly, a demand that they sue themselves and their co-conspirators would have been futile.

### *Directors Have Committed Themselves to a Position on the Merits*

By their failure to act after learning of Plaintiff's claims and by their affirmative conduct in a similar case, Directors have shown that they are so committed to the position that the investments at issue were legal and that Plaintiff's claims have no merit that they cannot be expected to respond in good faith to a demand that those claims be pursued. (Compl. ¶ 169)

In the five years since the Fund suffered the losses set forth in the Complaint, Directors have been aware of the losses, but have taken no steps to recoup them for the Fund's investors.

3

Their inaction supports a reasonable inference that a demand would have been futile. (Compl. ¶ 170) In addition, Directors were sued by a different investor in a similar case involving a different American Century mutual fund in *Seidl v. American Century Companies, Inc.*, 08 Civ. 8857 (DLC) (S.D.N.Y.). Directors litigated that other action, filed pleadings that denied the claims on their merits, and sought final dismissal of all claims with prejudice. (Compl. ¶¶ 171-182) Because the claims in this action are similar to the claims in *Seidl*, the pleadings and motion papers directed at the merits that Directors filed in *Seidl* support a reasonable inference that Directors in this case are wholly committed to their position Plaintiff's claims lack merit and should not be pursued on behalf of ACWMF. Therefore, they cannot reasonably be expected to respond to a demand in a fair, disinterested manner. (Compl. ¶ 183)

In addition to the facts alleged in the Complaint, the Court can take judicial notice of post-complaint events that are a matter of public record. As Defendants inform the Court in their suggestions, prior to the filing of *Seidl v. Am. Century Cos.,* No. 10-cv-04152 (W.D. Mo. July 15, 2010), the plaintiff made a demand on the board of the nominal defendant to comply with Judge Cote's decision that they do so before re-filing suit. *See* Institutional Def. Sugg. [Docket # 51] at 5. The board of directors in that case – which is *identical* to the Board in *this* case – *refused* the demand. *See Seidl*, First Amended Verified Derivative Complaint [Docket # 21] at ¶ 120. This confirms what the Complaint in this case alleges: demand on the Board ACWMF would have been futile. In seeking to force Plaintiff to make a demand on the Board *in this action – after* the exact same Directors have already rejected a substantially similar demand on behalf of another investor in a different American Century fund – Directors are attempting to insulate themselves and their co-defendants from any accountability for their actions. (Compl ¶ 154) Their goal is to force Plaintiff to make a demand, which will allow Directors to refuse (for

a second time) to take any action to vindicate the rights of the Fund's investors. Later, Defendants will undoubtedly argue that their refusal to take action cannot be questioned under the "business judgment" rule. None of this Kafkaesque charade, of course, is actually calculated to benefit the Fund's investors.

### *The Director Defendants Owe Conflicting Duties to Other Funds*

None of the Directors can reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule because they face irreconcilable conflicts of interest in responding to a demand that ACWMF pursue claims on behalf of the Fund's shareholders against Defendants. This is because the Directors owe conflicting duties to the other ten mutual funds within ACWMF, all of which have an interest in blocking any recovery by the Fund against defendant ACGIM, the Fund's investment advisor.

The nominal defendant, ACWMF, is an "umbrella" investment company registered under the 1940 Act. It comprises eleven separate mutual funds, each offering a separate series or class of stock to investors. Each portfolio of a series mutual fund generally has different investment objectives and policies from other funds included within the umbrella entity. The shareholders of each portfolio do not participate in the investment results of any other portfolio and must look solely to the assets of their portfolio for most purposes, including redemption, liquidation, earnings, and capital appreciation. Each series of stock represents a different group of investors with an interest in a segregated portfolio of securities. Such portfolios are not separate legal entities. However, they are treated as separate entities for many purposes. For example, with a few exceptions, the SEC has applied the provisions of the 1940 Act to a series fund as if the individual portfolio of each fund is a separate investment company. Each separate portfolio is commonly referred to as a "fund." The Fund is one of ACWMF's eleven funds. ACWMF has a single board of directors, which manages all eleven funds. (Compl. ¶¶ 39-40)

5

Defendants admit that, although the eleven funds within ACWMF are not separate legal entities, they nevertheless should be "treated" as such. (Institutional Def. Sugg. [Docket # 51] at 12) Accordingly, the Directors have duties of undivided loyalty to *all eleven* of the funds that compose ACWMF – and not only to the Fund at issue here. (Compl. ¶ 162)

While recovery of the Fund's losses and management fees paid to ACGIM are in the best interest of the Fund's investors, the prosecution of these claims is not in the best interests of the other ten ACWMF funds that did not invest in illegal gambling companies – to which the Directors have separate and independent fiduciary duties. Any significant judgment against ACGIM will adversely affect those ten other funds. (Compl. ¶¶ 162-168)

Defendant ACGIM is responsible for providing or arranging for all services necessary for the operation of all the separate funds that compose ACWMF. AGCIM pays for all such operation expenses in large part from the fees Defendants allocate to the Fund. (Compl. ¶ 165) For example, in ACWMF's Annual Report for the year ended November 30, 2006, Defendants disclosed that the Fund paid $21,230,000 in fees to ACGIM on behalf of ACWMF. That amount was over 34 times greater than the average contribution of the eleven funds that compose ACWMF – and ten times greater than the median contribution of the other ten funds. (Comp. ¶ 165) Because of the large amount of fees that ACIM allocated to the Fund, Defendants are able to subsidize the other ten funds that compose ACWMF primarily from the fees paid by the Fund. This is done as a regular way of doing business and for the purpose of boosting the performance of the other funds. (Compl. ¶ 167)

Successful prosecution of Plaintiff's claims would adversely affect the shareholders of the other ten series funds that compose ACWMF because those funds rely on ACGIM to pay all of their operational costs. Moreover, the other funds were subsidized by, and have a reasonable

expectation of continued subsidies from, the large amount of fees that the Fund pays to ACGIM on behalf of ACWMF. Were Plaintiff to prevail in this litigation, the subsidies would cease, and their fees would increase. (Compl. ¶ 167) This presents an irreconcilable conflict of interest between (a) the Fund and (b) all the other ten funds in ACMF with respect to the outcome of this litigation. Because of the conflicting duties that Directors owe to the other ten funds to which they owe a duty of undivided loyalty, a demand on the board would have been futile.

## ARGUMENT

## PLAINTIFF WAS NOT REQUIRED TO MAKE A DEMAND ON THE BOARD TO BRING THIS ACTION

### A. No Pre-Suit Demand Is Required When Mutual Fund Shareholders Seek to Vindicate Racketeering Injury Caused by Mutual Fund Fiduciaries

Plaintiff's right to pursue federal statutory claims derivatively is an issue of federal law. *See Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90 (1991). His right to pursue derivative common law claims is governed by state law.

In considering any demand requirement in the mutual fund context, this Court should be mindful of the unique structure of mutual funds as distinguished from normal corporations. As the Supreme Court of the United States has explained:

> unlike most corporations, an investment company is typically created and managed by a pre-existing external organization known as an investment adviser …. Because the adviser generally supervises the daily operation of the fund and often selects affiliated persons to serve on the company's board of directors, *the relationship between investment advisers and mutual funds is fraught with potential conflicts of interest*.

*Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 536 (1984) (emphasis added).

Because of the heightened danger associated with conflicts of interest in mutual funds, the Supreme Court in *Daily Income* interpreted the language of § 36(b) of the 1940 Act, which allows investors to bring certain suits "on behalf of" their mutual funds, to bring such actions

7

*without* making any demand on the board. *Id.* at 539-542. The Supreme Court noted that the 1940 Act reflected Congressional skepticism that it would be prudent to "rely solely on the fund's directors" to protect the interests of mutual fund investors given the inherent conflicts that those directors face. *Id.* at 541. Therefore, the Supreme Court held that it was appropriate to allow mutual fund investors the benefit of vindicating their federal rights under the 1940 Act without first making a demand on the fund's board despite the statute's language that such actions be brought "on behalf of" the funds. This result was deemed appropriate to fulfill the 1940 Act's "broad remedial purpose." *Id.*

In *Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90 (1991), the Supreme Court was called upon to determine whether the Court should fashion a federal common law rule obliging the shareholder in a derivative action under § 20(a) of the 1940 Act to make a demand on the board of directors *even when such a demand would be excused as futile under state law*. In part "because a futility exception to demand does not impede the purposes of the … Act, [the Court] decline[d] to displace state law with a uniform rule abolishing the futility exception in federal derivative actions." 500 U.S. at 92. In *Kamen*, the Court made clear that state law should *not* be used when "application of [the particular] state law [in question] would frustrate specific objectives of the federal programs." 500 U.S. at 98. And, as the *Kamen* Court reaffirmed, the 1940 Act "clearly envisions" the critical role that aggrieved shareholders would fulfill in "protecting investment companies from conflicts of interest" and from breaches of the investment adviser's fiduciary duties. *Id.* at 108.

Unlike *Kamen*, where state law *permitted* the derivative action based on the culpability of the director – and the Supreme Court *refused* to abolish the demand futility exception to allow shareholders to fulfill their role in protecting their own interests – in this case, Defendants argue

8

that state law does not permit a derivative action, even when the directors are alleged to have conspired in violation of RICO. If Defendants' argument were accepted, then the prosecution of the fund's RICO claims would be left entirely to the directors, who are also the wrongdoers. That would be patently inconsistent with the broad remedial purpose of RICO. In enacting RICO, Congress intended to provide a remedy for those who were injured by reason of racketeering activities, and the statute expressly provides that it is to "be liberally construed to effectuate its remedial purposes," Pub.L. 91-452, § 904(a), 84 Stat. 947 (1970). *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497-98 (1985).

Where, as here, federal rights are at stake, the Court should be vigilant to ensure that the significant injury suffered by mutual fund investors – which is uncontroverted – is not left unredressed by directors who have consistently expressed their hostility to holding themselves and their co-defendants answerable for their wrongdoings. When federally protected rights are at stake, "it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684 (1946). "It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress." *Marbury v. Madison*, 5 U.S. 137, 147 (1803).

Consistent with the reasoning of *Daily Income*, Plaintiff is entitled to pursue his derivative RICO claims without first making a demand on the Board. Even if, as a matter of federal common law, a demand were required as a precondition to bringing a derivative RICO action, then consistent with the reasoning of *Kamen*, demand should be excused where, as here, a demand would be futile.

### B. To the Extent Any Demand Is Required, It Was Excused

In the discussion that follows, Plaintiff focuses on Maryland law, which governs his right to pursue derivative common law claims. Plaintiff is entitled to pursue his derivative RICO

9

claims for the same reasons that Maryland law permits him to pursue derivative common law claims. Plaintiff submits that he should be entitled to pursue his RICO claims, however, even if he were not permitted to pursue common law claims under Maryland law.

Under *Werbowsky v. Collumb*, 766 A.2d 123 (Md. 2001), demand on the board of directors of the nominal defendant is excused when a plaintiff establishes that "a majority of the directors are so [i] personally and directly conflicted or [ii] committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." 766 A.2d at 144. Here, the complaint alleges with particularity facts that satisfy both prongs of that test.

In *Werbowsky,* the Court of Appeals made clear that when a complaint adequately *alleges* demand futility, the issue should be resolved in the context of a *summary judgment* motion, preferably after an evidentiary hearing. 766 A.2d at 145. In that case, the Court of Appeals held that the lower court had properly granted *summary judgment* on the issue, because the plaintiffs – after an opportunity for discovery – had failed to produce sufficient evidence to prove the allegations of the complaint. Here, as in *Werbowsky*, Plaintiff's particularized and uncontroverted allegations of director wrongdoing and conflicts are sufficient to survive a motion to dismiss.

The futility of making a demand must be gauged at the time the complaint is filed. In considering that issue, however, the court may consider facts subsequent to the filing of the complaint. *See, e.g.*, *In re American Intern. Group, Inc.*, 965 A.2d 763, 808-09 (Del. Ch. 2009).[3]

---

[3] As Defendants acknowledge, the courts of Maryland often look to Delaware decisions.

### 1. Demand Is Excused Because the Directors Are Conflicted Due to Their Potential Liability

Defendants assume that under *Werbowsky*, allegations of wrongdoing directed against the directors to whom a demand would otherwise be made should be *disregarded* for purposes of considering demand futility. That is not the law. In *Parish v. Maryland & Virginia Milk Producers Ass'n*, 250 Md. 24, 242 A.2d 512 (1968), members of an incorporated cooperative association sued the association and a number of individual officers and directors, complaining of fraud, mismanagement, and self-dealing on the part of the officers and directors. The trial court dismissed the complaint for failure to state a cause of action. The Court of Appeals held that the complaint adequately alleged those and other claims. The Court also held that because the complaint adequately alleged those claims, and because a majority of the current board participated in some of the wrongful acts complained of, the complaint sufficiently alleged that "it would be futile for the plaintiffs to make demand upon those directors to cause the Association to sue them to recover for their own wrongful injuries to the Association." 250 Md. at 83, 242 A.2d at 545. The Court's determination of futility was based on two somewhat different precepts: (1) it was not likely that the culpable directors would, in fact, agree to permit the company to sue them; and (2) even if they would so agree, a court should not permit them to decide because of their conflicted status.

As *Parish* illustrates, the question of demand futility is inextricably connected to the question whether the complaint adequately alleges claims of serious wrongdoing on the part of the defendants. Accordingly, Defendants' strategy of asking this Court to dismiss this case without even considering the adequacy of the complaint, should be rejected.

In *Werbowsky*, the Maryland Court of Appeals did not overrule *Parish* or abolish the futility exception. On the contrary, the *Werbowsky* Court expressly preserved the futility

11

exception and, in articulating it, expressly recognized that director conflicts excuse demand. *Parish* remains good law where, as here, the complaint contains well supported and particularized allegations of serious director wrongdoing.

In *Felker v. Anderson*, 2005 WL 602974 at *3 (W.D. Mo. Feb. 11, 2005), Judge Smith held that a demand on the board of a Maryland corporation was futile post-*Werbowsky* where, as here, the complaint alleged that the directors participated in the wrongdoing and had "not sought to recover any part of the damages" caused by the defendants. *Felker,* 2005 WL 602974 at *3.

Defendants' reliance on *Hartsel v. Vanguard Group*, 2011 WL 2421003 (Del. Ch. June 15, 2011), *appeal pending*, No. 306,2011 (Del. Sup. Ct.), is misplaced. *Hartsel* involved Delaware law, not Maryland law, and its decision on the issue of demand futility was based on the specific provision in the declarations of trust at issue in that case, which purported to be based on a unique provision in the Delaware Statutory Trust Act that is inapplicable to this case. The mutual fund in this case is not a Delaware Statutory Trust, and it is not governed by anything like the trust provisions involved in *Hartsel*. Accordingly, this Court should follow *Felker*, in which Judge Smith correctly analyzed demand futility under Maryland law after *Werbowsky*.

> 2. *Demand Is Excused Because the Directors Previously Committed Themselves to Their Decision Not to Pursue Claims Arising from the Fund's Investments in Illegal Gambling*

A majority of the Directors are so "committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky,* 766 A.2d at 144. By their failure to act after learning of Plaintiff's claims and by their affirmative conduct in a similar case, the Directors have shown that they are so committed to their stated antagonism to Plaintiff's claims that they cannot be expected to respond in good faith to a demand that those claims be pursued. Based on the facts alleged in the

Complaint, and on the Director Defendants' refusal of the demand in *Seidl*, there can be no doubt that a demand on the board would have been futile in this case. *See Felker,* 2005 WL 602974 at *3. Director Defendants' argument to the contrary simply invites the Court to ignore reality. This Court should not indulge their fantasy, particularly if the result of such indulgence would be to leave the innocent victims of their wrongdoing without a remedy.

> 3. Demand Is Excused Because the Director Defendants Owe Conflicting Duties to the Other Funds

The Director Defendants have an inherent conflict of interest in determining any demand relating to the claims in this action. Defendants admit that, although the eleven funds within ACWMF are not separate legal entities, they nevertheless should be "treated" as such. (Institutional Def. Sugg. [Docket # 51] at 12) Accordingly, the Directors have duties of undivided loyalty to *all eleven* of the funds that compose ACMF. (Compl. ¶¶ 39, 162)

While recovery of the Fund's losses and management fees paid to ACIM are in the best interest of the Fund's investors, the prosecution of these claims is not in the best interests of the other ten funds to which the Directors have separate and independent fiduciary duties of undivided loyalty. Any significant judgment against defendants ACC or ACIM will adversely affect those other funds. (Compl. ¶¶ 162-168)

The conflict of interest faced by ACWMF's board with respect to the claims in this litigation are of an entirely different character than the typical allegations of director conflict that courts sometimes reject and upon which Defendants rely. This branch of Plaintiff's argument does not turn on the unwillingness or inability of the directors of ACWMF to put aside *personal* considerations to honor their fiduciary duties. On the contrary, assuming *arguendo* that the Directors will take their fiduciary obligations seriously, their fiduciary obligations to the ten other funds create an absolute and irreconcilable conflict. *Cf. Wilkens Square, LLLP v. W.C.*

*Pinkard & Co., Inc.*, 984 A.2d 329 (Md. App. 2009) (absolute conflict exists when a broker represents both parties to the sale of real estate); *accord Booth v. Robinson*, 55 Md. 419 (1881) (board's obligation to act with *uberrima fides* disallows them attempting to "serve two masters, or do their duty equally to two antagonists").

In both of the "remuneration" cases upon which Defendants rely, *In re Merrill Lynch Focus Twenty Fund Inv. Co. Act. Litig.*, 218 F.R.D. 377 (E.D.N.Y. 2003); and *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005), the courts considered whether demand was excused under *Werbowsky* based *solely* on the fact that the fund directors received high compensation (generally between $100k to $400k per year) for sitting on multiple boards. Both cases considered whether the directors, in light of their high compensation, would be (i) conflicted in deciding how to respond to a demand or (ii) committed to an adverse position in responding to a demand. The courts in these cases did *not* consider any potential conflicts arising from the specific underlying conduct for which the plaintiffs sued. Moreover, in neither case did the court consider whether the board members' conflicting duties of loyalty to many series mutual funds organized under an "umbrella" entity such as ACWMF excuses pre-suit demand. Here, the Complaint alleges with particularity that the all members of ACWMF's board face multiple conflicts of interest that disqualify them from deciding whether to prosecute claims on behalf of the Fund to the detriment of the other funds within ACWMF. None of defendants' cited cases are relevant to determining this specific issue.

The cases upon which Defendants rely not only fail to support Defendants' argument, they also demonstrate the weakness of Defendants' position on demand futility. "Remuneration" cases such as the ones on which Defendant Directors rely trace their history to legislative responses to *Strougo v. Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 783, 795 (S.D.N.Y.1997).

*Strougo* held that service on multiple boards for significant remuneration *by itself* could excuse demand. While *Strougo* was later superseded by statute, it illuminates the severity of the structural conflicts facing fund boards. *Strougo* and the cases cited by Defendants – by merely raising the question whether the structure of mutual funds *by itself* could automatically excuse demand in all cases – demonstrate the appropriateness of treating mutual funds differently from ordinary corporations with respect to demand futility. Courts should therefore heed the Supreme Court's guidance in *Daily Income*, 464 U.S. 523, and exercise vigilance in safeguarding the rights of injured mutual fund investors when their fiduciaries fail to do so as part of an illegal scheme.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the separate suggestions filed simultaneously herewith, the motion to dismiss should be denied.

**Pursuant to Local Rule 7.0(g), Plaintiff respectfully requests oral argument.**

Dated: September 16, 2011

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ Thomas I. Sheridan, III |
| Eric S. Johnson (MO Bar. No. 61680) | Thomas I. Sheridan, III (*pro hac vice*) |
| Gregory P. Erthal (*pro hac vice*) | Andrea Bierstein (*pro hac vice*) |
| **SIMMONS BROWDER GIANARIS** | **HANLY CONROY BIERSTEIN SHERIDAN** |
| **ANGELIDES & BARNERD LLC** | **FISHER & HAYES LLP** |
| One Court Street | 112 Madison Avenue |
| Alton, IL 62002 | New York, NY 10016-7416 |
| (618) 259-2222 | (212) 784-6404 |
| ejohnson@simmonsfirm.com | tsheridan@hanlyconroy.com |
| gerthal@simmonsfirm.com | abierstein@hanlyconroy.com |

*Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that on September 16, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following defense counsel:

> W. Perry Brandt
> perry.brandt@bryancave.com
>
> Gordon C. Atkinson
> atkinsongc@cooley.com
>
> Kurt D. Williams
> kwilliams@berkowitzoliver.com,
>
> Nick J. Kurt
> nkurt@berkowitzoliver.com,
>
> Benjamin Kleine
> bkleine@cooley.com
>
> Steuart H. Thomsen
> steuart.thomsen@sutherland.com

I hereby certify that on September 16, 2011, I served the following defense counsel by e-mail as provided in the Court's Order dated February 24, 2010:

> Marguerite C. Bateman
> marguerite.bateman@sutherland.com

> /s/ Thomas I. Sheridan, III
> Thomas I. Sheridan, III

Dated: September 16, 2011