IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| NELSON GOMES, individually, derivatively and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:10-cv-00083-SOW ) |
| AMERICAN CENTURY COMPANIES, INC.; AMERICAN CENTURY GLOBAL INVESTMENT MANAGEMENT, INC.; JAMES E. STOWERS, JR.; JAMES E. STOWERS, III; JONATHAN S. THOMAS; THOMAS A. BROWN; ANDREA C. HALL; DONALD H. PRATT; GALE E. SAYERS; M. JEANNINE STRANDJORD; TIMOTHY S. WEBSTER; WILLIAM M. LYONS; ENRIQUE CHAN; MARK KOPINSKI; AND BRIAN BRADY, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| AMERICAN CENTURY WORLD MUTUAL FUNDS, INC., doing business as AMERICAN CENTURY INTERNATIONAL DISCOVERY FUND, | ) ) ) ) ) |
| Nominal Defendant. | |

**INSTITUTIONAL DEFENDANTS' REPLY SUGGESTIONS
IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S
<u>VERIFIED DERIVATIVE AND CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiff's Direct Claims Should Be Dismissed Because Any Alleged Injury Is Derivative, Not Direct. ............................................................................. 2

        A.    Plaintiff Has Not Suffered an Injury Independent of the Fund's. ............... 2

        B.    Plaintiff Should Not Be Granted an Exception to Shareholder Standing. ................................................................................................... 7

    II.    Plaintiffs' Derivative Claims Should Be Dismissed Because He Fails Sufficiently to Plead Demand Futility. ............................................................... 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brennan v. Chestnut*,
    973 F.2d 644 (8th Cir. 1992) ...................................................................................................10

*Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*,
    528 F.3d 1001 (8th Cir. 2008) ..............................................................................................7, 10

*Daily Income Fund, Inc. v. Fox*,
    464 U.S. 523 (1984)......................................................................................................................9

*Forsythe v. Sun Life Fin., Inc.*,
    417 F. Supp. 2d 100 (D. Mass. 2006) ...........................................................................................5

*Gentile v. Rossette*,
    906 A.2d 91 (Del. 2006) .....................................................................................................6, 7, 8, 9

*Hamilton v. Allen*,
    396 F. Supp. 2d 545 (E.D. Pa. 2005) ............................................................................................5

*Hartsel v. Vanguard Group, Inc.*,
    No. 5394-VCP, 2011 WL 2421003 (Del. Ch. June 15, 2011)..................................................5, 7

*Hogan v. Baker*,
    No. Civ. A 305-CV-0073P, 2005 WL 1949476 (N.D. Tex. Aug. 12, 2005)..............................5

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992)......................................................................................................................9

*In re Goldman Sachs Mutual Funds Fee Litigation*,
    No. 04-CV-2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ..................................................5

*In re Mut. Funds Inv. Litig.*,
    519 F. Supp. 2d 580 (D. Md. 2007) ..............................................................................................6

*Kauffman v. The Dreyfus Fund, Inc.*,
    434 F.2d 727 (3d Cir. 1970)..........................................................................................................4

*Mutchka v. Harris*,
    373 F. Supp. 2d 1021 (C.D. Cal. 2005) ........................................................................................6

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)......................................................................................................................9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Seidl v. Am. Century Cos.*,
　713 F. Supp. 2d 249 (S.D.N.Y. 2010), *aff'd*, 427 F. App'x 35 (2d Cir. 2011), *petition
　for cert. filed*, No. 11-339 (U.S. Sep. 16, 2011) ...................................................................3

*Shenker v. Laureate Educ., Inc.*,
　983 A.2d 408 (Md. 2009) ..................................................................................................3, 8

*Stegall v. Ladner*,
　394 F. Supp. 2d 358 (D. Mass. 2005) ....................................................................................5

*Strigliabotti v. Franklin Res., Inc.*,
　No. C-04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) ............................................4, 5

*Tafflin v. Levitt*,
　608 A.2d 817 (Md. Ct. Spec. App. 1992) ..............................................................................2

**STATUTES**

18 U.S.C.
　§§ 1961 *et seq.* (2000) ............................................................................................................1

Md. Code Ann., Corps. & Ass'ns
　§ 2-405.1(a), (g) .....................................................................................................................3
　§ 2-208.2 ................................................................................................................................6

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) .......................................................................................1

Pursuant to Fed R. Civ. P. 12(b)(6), defendants American Century Companies, Inc., American Century Global Investment Management, Inc., and American Century Investment Management, Inc., along with certain of their current and former officers and employees, James E. Stowers, Jr., James E. Stowers, III, Jonathan S. Thomas, William M. Lyons, Enrique Chang, Mark Kopinski, and Brian Brady (together, "Defendants"), respectfully submit the following reply to Plaintiff's Suggestions in Opposition to Institutional Defendants' Motion to Dismiss (the "Opposition").

## PRELIMINARY STATEMENT

Plaintiff's Opposition cannot save his inadequately pled Verified Derivative and Class Action Complaint (the "Complaint") from dismissal, and for half of Plaintiff's brief he does not even try. Instead, in a section entitled "Facts," Plaintiff devotes seven pages of legal argument to the merits of his claims, seemingly to distract from his inability to demonstrate the standing necessary to bring his claims directly.[1] Whatever the merits of Plaintiff's underlying arguments (and, as explained in the Institutional Defendants' Suggestion in Support of their Motion to Dismiss ("Motion"), court after court has dismissed virtually identical claims), they cannot save his direct claims for violations of RICO, breach of fiduciary duty, and negligence.

Plaintiff's direct claims fail because any injury he allegedly suffered is derivative and must be brought on behalf of the corporation. Plaintiff has not suffered an injury that is independent of the injury suffered by the American Century International Discovery Fund (the

---

[1] Plaintiff also argues that Supreme Court and Eighth Circuit law supports finding proximate cause under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (2000). (Opp'n at 2, 6.) Plaintiff's argument is irrelevant to this motion to dismiss, which focuses on the more fundamental question of whether Plaintiff has shareholder standing to sue at all. But the argument is also wrong for the reasons stated in Defendants' and Nominal Defendant's Reply Suggestions in Support of Motion to Transfer Venue. (*See* Dkt. No. 24 at 7-8.) Instead, Eighth Circuit law is completely in accord with Second Circuit, Ninth Circuit and Supreme Court law on this issue. (*See id.*)

"Fund"), and each of Plaintiff's arguments to the contrary fails as a matter of law. Nor should the Court grant Plaintiff an exception to the law of shareholder standing. Doing so would abrogate the very safeguards that this law is designed to protect. Plaintiff therefore lacks standing to bring his claims directly, and his direct claims should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiff's Direct Claims Should Be Dismissed Because Any Alleged Injury Is Derivative, Not Direct.

As explained in Defendants' opening brief, Plaintiff's direct claims should be dismissed because any alleged injury suffered by Plaintiff is derivative and must be brought on behalf of the Fund. (Mot. at 7-12.) Plaintiff's Opposition fails to save his direct claims, and they should be dismissed with prejudice.

#### A. Plaintiff Has Not Suffered an Injury Independent of the Fund's.

Plaintiff's direct claims fail because he has not alleged an injury that is "distinct" from that suffered by the Fund. *See Tafflin v. Levitt*, 608 A.2d 817, 820 (Md. Ct. Spec. App. 1992) (holding that plaintiff's claims must be brought derivatively where he does not allege damages that are "distinct" from those of the corporation). Instead, his injuries are expressly premised on allegations that Defendants mismanaged *the Fund's* assets and *the Fund's* affairs by allowing *the Fund* to make what Plaintiff believes were imprudent or unlawful investments. (*See* Mot. at 8.) As explained in Defendants' opening brief, such injuries are the essence of claims that must be brought derivatively, and not directly. (*See id.* at 7-12.)

Plaintiff attempts to save his direct claims by raising a number of arguments that he says show that the injury he suffered was independent of the Fund's. None of Plaintiff's arguments are supported by law.

*First*, citing to *Shenker v. Laureate Education, Inc.*, 983 A.2d 408 (Md. 2009), Plaintiff argues that "[w]here, as here, 'a shareholder's action is based on breach of a duty owed directly to the shareholder, a direct action may be filed against the directors.'" (Opp'n at 11.) But Plaintiff fails to allege any duty that is directly enforceable by him. While Plaintiff argues that Defendants have violated his "contractual right to redeem from the Fund his *pro rata* share of the net asset value of the Fund" (Opp'n at 11), Plaintiff has made no allegation whatsoever that Defendants in any way interfered with his right to redeem his shares and, indeed, alleges only breach of other duties (*see* Compl. ¶¶ 257-63 (direct claim for breach of fiduciary duty), ¶¶ 264-69 (direct claim for negligence)). And, as explained in Defendant's opening brief, under Maryland law, the fiduciary duties owed to a corporation and its shareholders by its directors and officers are codified and may only be enforced by the corporation. (Mot. at 9-10.) *See also* Md. Code Ann., Corps. & Ass'ns ("Md. Corp. Code") § 2-405.1(a), (g); *Shenker*, 983 A.2d at 426 ("[T]o the extent § 2-405.1 creates duties on directors such as the duty of care contained in § 2-405.1(a), those duties are enforceable only by the corporation or through a shareholders' derivative action."). Plaintiff's direct claims for breach of fiduciary duty[2] and negligence belong to the corporation under Maryland law, "and must therefore be brought through a derivative action." *Seidl v. Am. Century Cos.*, 713 F. Supp. 2d 249, 256 (S.D.N.Y. 2010), *aff'd*, 427 F. App'x 35 (2d Cir. 2011), *petition for cert. filed*, No. 11-339 (U.S. Sep. 16, 2011).

*Second*, Plaintiff argues that he suffered a loss independent of the Fund's every time the value of the underlying gambling stocks fell, which he argues is a loss distinct from the loss

---

[2] Plaintiff argues that Defendants' violated their (1) duty to act in good faith, (2) duty of loyalty, and (3) duty of care. (Opp'n at 6-8.) Each is encompassed within Section 2-405.1(a), which states in pertinent part: "A director shall perform his duties as a director . . . (1) In good faith; (2) In a manner he reasonably believes to be in the best interests of the corporation; and (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances."

suffered by the Fund because the Fund's losses were not realized until it sold the underlying stock, whereas the redemption value of Plaintiff's shares was calculated on a daily basis. (Opp'n at 11-12 & n.9.) Plaintiff cites no authority for this argument and the argument makes no sense, as any loss to the redemption value of Plaintiff's shares only takes place as a result of a loss suffered to the Fund's assets (*i.e.*, the value of the underlying stock). Indeed, Plaintiff has placed himself in the untenable position of making the nonsensical argument that *he* suffered an injury when the redemption value of his shares in the Fund dropped, but the Fund did not suffer a similar injury when the share price of its allegedly illegal investments dropped (the very basis for the drop in his redemption value). (*See* Opp'n at 12 n.9.) Furthermore, this very argument has been considered and was firmly rejected by the Third Circuit: "Nowhere in the cases do we find authority for the proposition that the ease and capacity of evaluating a shareholder's redemptive value of mutual fund shares can vest in him a pro-rata share of the corporation's primary right to sue." *Kauffman v. The Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970). In fact, a holding to the contrary would allow a shareholder of any mutual fund to sue directly for any claim of mismanagement of fund assets, eviscerating the Maryland code provisions cited above.[3]

*Third*, Plaintiff cites *Strigliabotti v. Franklin Resources, Inc.*, No. C-04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) to argue that mutual fund investors should be allowed to bring direct claims because "every dollar of expense borne by the fund is distributed to shareholders as a *pro rata* deduction from the net asset price value per share." (Opp'n at 12.) But the *Strigliabotti* holding that Plaintiff cites has been rejected by every court that has considered it.

---

[3] Plaintiff further argues that he personally "lost profits, *i.e.*, the loss in value that his shares would have had if the Funds' [sic] portfolio had been invested in lawful investments." (Opp'n at 11.) Not only has Plaintiff failed to make such an allegation in his Complaint, but Plaintiff's lost profits are merely a *pro rata* share of the losses the Fund suffered when it did not make other investments, and therefore are not distinct from any injury to the Fund.

For example, in *In re Goldman Sachs Mutual Funds Fee Litigation*, No. 04-CV-2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006), the court wrote that:

> We are not persuaded that [the *Strigliabotti*] holding . . . is consistent with Delaware law. Rather, a pro rata bearing of expenses by individual shareholders seems to fall within the very essence of an injury which is not independent from that suffered by the corporation. . . . Indeed, if the only injury to an investor is the indirect harm which consists of the diminution in the value of his or her shares, the suit must be derivative.

*Id.* at *6 (quotation marks and citations omitted); *see also Hartsel v. Vanguard Group, Inc.*, No. 5394-VCP, 2011 WL 2421003, at *17 (Del. Ch. June 15, 2011) (finding *Strigliabotti* inconsistent with Delaware law and ruling that mutual fund investors' claims were derivative rather than direct); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 365 (D. Mass. 2005) (finding *Strigliabotti* "unpersuasive" and noting that its "description of mutual funds does not distinguish them in any material way from traditional corporations"); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 112 (D. Mass. 2006) (finding *Strigliabotti* "unavailing" and "its reasoning unpersuasive"); *Hamilton v. Allen*, 396 F. Supp. 2d 545, 552 (E.D. Pa. 2005) (rejecting *Strigliabotti* because "[a]nalytically . . ., Plaintiffs seek essentially to recover for the diminution of assets *to the Funds*") (emphasis in original); *Hogan v. Baker*, No. Civ. A 305-CV-0073P, 2005 WL 1949476, at *4 (N.D. Tex. Aug. 12, 2005) ("[*Strigliabotti*'s] reasoning is at odds with the overwhelming majority of courts who have addressed this issue" and "*Strigliabotti* does not cite any applicable case law in reaching its holding"). In short, *Strigliabotti* does not help Plaintiff.

*Fourth*, Plaintiff argues that American Century World Mutual Funds, Inc. ("ACWMF") is a "series" fund and that the alleged harm was suffered only by the Fund's shareholders and not by the shareholders of the other series funds, and therefore that Plaintiff is essentially a minority shareholder. (Opp'n at 12-13.) Plaintiff cites no law for the proposition that the Fund's investors are "essentially a minority class of shareholders," and there is nothing about the

structure of series mutual funds that creates the conflicts of interest or potential for abuse of minority shareholders' rights that would allow a shareholder to sue directly rather than derivatively. *See Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027-28 (C.D. Cal. 2005) (finding distinction between corporation and series mutual fund of no consequence in determination of whether claims are direct or derivative). While Plaintiff argues that the alleged loss was suffered only by the Fund's shareholders and not the shareholders of other ACWMF funds, such fact is of no consequence, as any recovery would go to this particular Fund and not to shareholders of other ACWMF funds. *See, e.g.*, Md. Corp. Code § 2-208.2 (the assets and liabilities of each series are to be kept separate from the assets and liabilities of other series and of the corporation generally); *see also In re Mut. Funds Inv. Litig.*, 519 F. Supp. 2d 580, 588 (D. Md. 2007) ("[T]he SEC . . . has expressly pronounced that [for series mutual funds] each series is to be treated as a separate investment company." (citations omitted)).

Plaintiff attempts to save his argument with a citation to *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006), but his reliance on that case is misplaced. In *Gentile*, the majority shareholder caused the corporation to enter into a transaction that the minority shareholders alleged wrongfully reduced both the value of their stake and their voting power. While the court held that "[n]ormally, claims of corporate overpayment are treated as causing harm solely to the corporation," it recognized that both derivative and direct claims can be brought where a majority shareholder enters into a transaction that dilutes the value and voting power of the minority shareholders. 906 A.2d at 99-100. There is nothing about Plaintiff's situation as an investor in one of the various series offerings that is analogous to a circumstance where a majority shareholder has exercised control over the minority shareholders to squeeze out or dilute their interests. Indeed, the Delaware Chancery Court has rejected a similar attempt to

expand the reasoning of *Gentile* to shareholders in mutual funds. *Hartsel*, 2011 WL 2421003, at *19 ("The 'limited circumstances involving controlling stockholders' that gave rise to a dual direct and derivative claim in *Gentile* simply do not exist in the circumstances of this case.").

*Finally*, Plaintiff argues that recovery to the corporation would only go to current investors, whereas recovery in a direct lawsuit would go to the investors at the time of the alleged breach, which could include former investors, and that, therefore, the claim is distinct from the corporate claim. (Opp'n at 13-14.) Plaintiff's argument is unsupported by any case law and—if accepted—would render the derivative lawsuit requirement meaningless, since under Plaintiff's theory, a shareholder plaintiff would *always* be able to sue directly where there has been any change of shareholder ownership between the time of alleged breach and the time of anticipated recovery (which would virtually always be the case for publicly traded companies or mutual funds). As the court explained in *Hartsel*, "[t]hat certain stockholders no longer own shares of the Affected Funds does not change the derivative nature of the harm alleged by Plaintiffs. Rather, it means that those investors no longer have standing to pursue a derivative claim." 2011 WL 2421003, at *19 n.123.

**B.     Plaintiff Should Not Be Granted an Exception to Shareholder Standing.**

Plaintiff asks the Court, in the alternative, to grant him an exception to the law of shareholder standing and allow him to sue directly. (Opp'n at 10, 14-15.) But Plaintiff has failed to demonstrate why he should be granted such an exception, and the Court should not do so. *See Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1025 (8th Cir. 2008) (refusing to grant an exception to shareholder standing).

To justify an exception, Plaintiff argues that it is unlikely, unless he is allowed to sue directly, that the wrongdoing he alleges will be vindicated. (Opp'n at 10.) Plaintiff appears to anticipate that the Court will hold that demand on the board of ACWMF was not excused and the

only way to save his derivative claims will be to make such a demand. (*See id.* at 10, 14-15.) With the decision on whether to pursue the claims "left to the wrongdoers," "the rights of investors will never be vindicated." (*Id.* at 15.) This is because (according to Plaintiff) "[t]he Defendant Directors are not going to sue themselves, and they are not going to sue those responsible for appointing them and paying them substantial salaries" to sit on the board of ACWMF and other corporations. (*Id.*)

But granting an exception in these circumstances would swallow the law of shareholder standing whole. The Maryland Court of Appeals explained as much in *Shenker*:

> In order to sue derivatively on behalf of the corporation, a plaintiff shareholder *must overcome a number of procedural hurdles and demonstrate that he or she, rather than the corporation itself*, should control the litigation. Specifically, before instituting suit, the derivative plaintiff either *must* make a demand on the corporation's board of directors to pursue the claim against the offending parties or *demonstrate* to the court that such demand would be futile due to the conflicting interests of the members of the board. . . . If the corporation, after investigation, fails to take the action requested by the shareholder, the shareholder may bring a 'demand refused' action.

983 A.2d at 423-24 (emphases added) (citations omitted). Shareholder-plaintiffs who seek to bring suit on behalf of a corporation must overcome these procedural protections because "[i]t is well established that courts generally will not interfere with the internal management of a corporation." *Id.* at 424 (quotation marks and citation omitted). Even so, Plaintiff asks the Court to abrogate these protections, apparently because he understands the inevitable, which is that he would fail to meet the necessary burden. (*See* Opp'n at 10, 14-15.) He should not be granted an exception that would render those procedural protections meaningless.

Plaintiff's citation to *Gentile* for the principle that the Court should grant an exception to shareholder standing where "an effective derivative remedy [is] no longer available as a practical matter" (Opp'n at 15) is therefore inapposite. As explained above, Plaintiff has an effective

-8-

derivative remedy, *so long as he is able to meet his burden of alleging demand futility*. Indeed, the availability of a derivative action to Plaintiff stands in stark contrast to the plaintiffs in *Gentile*, who were minority shareholders in a defunct corporation which had sold its assets to a similarly defunct corporation. *See* 906 A.2d at 93.

Plaintiff advances no other rationale for why he should be granted an exception to the law of shareholder standing. Instead, he cites several cases in support of the general (and vague) proposition that the Court should take a liberal stance in favor of granting the exception he requests. Plaintiff's citations, however, fail to support the conclusion he wishes the Court to reach. For example, Plaintiff suggests the Court follow the example of *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984), in which he claims the "Supreme Court . . . fashioned a remedy to allow" a direct suit "[b]ecause of the inherent conflicts associated with mutual funds." (Opp'n at 15.) But Plaintiff misrepresents *Fox*. In fact, the Supreme Court ruled that *Congress*, in passing an amendment to the Investment Company Act, had created an "unusual cause of action" that provided a limited exception to the rule of shareholder standing. *Fox*, 464 U.S. at 534-42. Plaintiff provides no support for the notion that either Congress or the Maryland legislature has created a similar cause of action.[4] Similarly, Plaintiff cites two *RICO* cases – *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) and *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992) – to argue that general principles underlying that statute should be extended in a manner that would allow his direct claims to proceed. (Opp'n at 14.) But, as explained in Defendants' opening brief (Mot. at 11), controlling Eighth Circuit case law holds that, unless there is direct injury to the shareholder, a shareholder's only remedy under RICO is derivative.

---

[4] Indeed, as explained above, under Maryland law the fiduciary duties owed to a corporation and its shareholders are codified and enforceable only on behalf of the corporation. (*See supra*, § I.A.)

*See Craig Outdoor*, 528 F.3d at 1024; *Brennan v. Chestnut*, 973 F.2d 644, 648 (8th Cir. 1992). And, as explained above, Plaintiff has failed to show that he lacks any effective derivative remedy, necessitating the invocation of any such principles.

For these reasons alone, the Court should refuse to grant Plaintiff's request for an exception to the law of shareholder standing.

## II. Plaintiffs' Derivative Claims Should Be Dismissed Because He Fails Sufficiently to Plead Demand Futility.

As discussed in the Fund and Independent Directors' initial Suggestions, Plaintiff's derivative claims must be dismissed because he has failed to adequately plead demand futility. (*See* Fund and Ind. Directors' Suggestions at 6-14.) Plaintiff's arguments in response are unavailing for the reasons set forth in the Fund and Independent Directors' Reply Brief, which Defendants adopt and incorporate herein by reference.

### CONCLUSION

For the reasons stated above, Plaintiff has failed to state any claim as a matter of law. Defendants respectfully submit that the Verified Derivative and Class Action Complaint should therefore be dismissed with prejudice without leave to amend.

Dated: October 17, 2011

Respectfully submitted,

BRYAN CAVE LLP

By: /s/ W. Perry Brandt
W. Perry Brandt  MO Bar. #28292
1200 Main Street, Suite 3500
Kansas City, MO 64105
(816) 374-3200
(816) 374-3300 (Fax)
perry.brandt@bryancave.com

And

Gordon C. Atkinson
COOLEY LLP
(*pro hac vice*)
101 California Street, 5th Floor
San Francisco, CA 94111-5800

Attorneys for defendants American Century Companies, Inc., American Century Global Investment Management, Inc., James E. Stowers, Jr., James E. Stowers, III, Jonathan S. Thomas, William M. Lyons, Enrique Chang, Mark Kopinski, and Brian Brady.

2547838/ST