IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| NELSON GOMES, individually, derivatively and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:10-cv-00083-SOW |
| AMERICAN CENTURY COMPANIES, INC.; AMERICAN CENTURY GLOBAL INVESTMENT MANAGEMENT, INC.; JAMES E. STOWERS, JR.; JAMES E. STOWERS, III; JONATHAN S. THOMAS; THOMAS A. BROWN; ANDREA C. HALL; DONALD H. PRATT; GALE E. SAYERS; M. JEANNINE STRANDJORD; TIMOTHY S. WEBSTER; WILLIAM M. LYONS; ENRIQUE CHANG; MARK KOPINSKI; AND BRIAN BRADY, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| AMERICAN CENTURY WORLD MUTUAL FUNDS, INC., doing business as AMERICAN CENTURY INTERNATIONAL DISCOVERY FUND, | ) ) ) ) ) | |
| Nominal Defendant. | ) | |

**REPLY SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S VERIFIED DERIVATIVE AND CLASS ACTION COMPLAINT**

Defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, and Timothy S. Webster (the "Independent Directors") and nominal defendant American Century World Mutual Funds, Inc. ("ACWMF"), doing business as American Century International Discovery Fund ("the Fund") (collectively, "Defendants"), respectfully submit the following Reply Suggestions in Support of Motion to Dismiss Plaintiff's Verified Derivative and Class Action Complaint. For the reasons set forth below and in Defendants' initial Suggestions in Support, Defendants' Motion to Dismiss should be granted.[1]

## ARGUMENT

### A. Plaintiff's Complaint Must Be Dismissed For Failure To Adequately Plead Futility of Demand

#### 1. Summary Allegations Of Involvement In Wrongdoing Do Not Establish Futility

Plaintiff argues that demand is excused as futile because the Complaint names certain current and former directors of ACWMF as defendants and alleges that they approved of or had constructive knowledge of the Fund's purchases of shares of Bwin Interactive Entertainment AG ("Bwin") and NETeller Plc ("NETeller"). (Opposition at 11-12.) Plaintiff's argument is deficient in several respects.

First, *Werbowsky* makes clear that a court applying Maryland law should not "excuse the failure to make demand simply because a majority of the directors approved or participated in some way in the challenged transaction or decision, … *or would be hostile to the action*." *Werbowsky v. Collomb*, 766 A.2d 123, 143-44 (Md. 2001) (emphasis added).[2] Courts applying

---

[1] Defendants also incorporate by reference the arguments made by the Institutional Defendants as to why the claims asserted by Plaintiff could only be pursued as derivative claims and cannot be brought as direct claims.

[2] Moreover, Plaintiff's conclusory allegations and arguments about the directors' purported involvement in the purchase of the shares in question misconstrue the role of a board of directors. (Opp. at 3.) Directors, particularly independent directors, do not act as "watchdogs" over each and every portfolio holding of the mutual funds on whose boards they sit. The Securities and Exchange Commission has explained that the role of mutual fund independent directors in monitoring is simply part of the independent directors' duties in "overseeing the use of fund

1

*Werbowsky* consistently have rejected arguments that allegations of director wrongdoing excuse demand, including District Judge Cote of the Southern District of New York, who concluded that "demand is not excused under Maryland law based on a plaintiff's speculation that 'a majority of the directors approved or participated in some way in the challenged transaction or decision,' or would be forced to sue themselves." *Seidl*, 713 F. Supp. 2d 249, 260 (S.D.N.Y. 2010), *aff'd*, 427 Fed. App'x 35 (2d Cir. 2011), *petition for cert. filed*, No. 11-339 (U.S. Sept. 16, 2011) (citations omitted). *See also In re Regions Morgan Keegan Secs., Deriv., and ERISA Litig.*, 694 F. Supp. 2d 879, 887 (W.D. Tenn. 2010) ("[T]he allegation that the Directors participated in, ratified, or approved some of the wrongful conduct cannot excuse demand. This… would make the demand requirement a chimera. … [C]ourts should not allow mere allegations of director wrongdoing to waive the demand requirement.") (citations omitted).

Second, Plaintiff's citations to *Parish v. Maryland & Virginia Milk Producers Ass'n, Inc.*, 242 A.2d 512 (Md. 1968), and *Felker v. Anderson*, No. 04-0372-CV, 2005 WL 602974 (W.D. Mo. Feb. 11, 2005), are unpersuasive. *Parish* was decided over thirty years before *Werbowsky*, and the *Werbowsky* court observed that "the trend since then has been to enforce more strictly the requirement of pre-suit demand and at least to circumscribe, if not effectively eliminate, the futility exception." *Werbowsky*, 766 A.2d at 137. Judge Cote noted that "*Felker* has been criticized… by other courts as an improper application of Maryland law and as generally unpersuasive." *Seidl*, 258 n.13. *See also Caston v. Hoaglin*, No. 2:08-cv-200, 2009 WL 3078214, at *7 (S.D. Ohio Sept. 23, 2009) ("Although it remains open that similarly plead

---

assets and in monitoring the conflicts of interest faced by a fund's investment adviser. . . ." *Commission Guidance Regarding the Duties and Responsibilities of Investment Company Boards of Directors with Respect to Investment Adviser Portfolio Trading Practices, Proposed Rule*, Release No. 28345, 93 S.E.C. 2469 (July 30, 2008). Plaintiff's conclusory allegations do not plausibly suggest that the directors in fact had any direct involvement in the transactions at issue. *See*, *e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (stating that a complaint must allege "enough facts to state a claim to relief that is plausible on its face.").

facts may satisfy the demand-futility exception under Maryland law, to the extent that *Felker* may conflict with the Maryland Court of Appeals' holding in *Werbowsky*, this Court, like the other courts that have considered *Werbowsky*, finds it to be unpersuasive.").

Finally, Plaintiff's argument that it is improper for the Court to dismiss the Complaint for failure to make a demand "without even considering the adequacy of the complaint" misstates Maryland law. As the Maryland Court of Appeals explained, the limited nature of the demand futility exception "focuses the court's attention on the real, limited, issue – the futility of a pre-suit demand – and avoids injecting into a preliminary proceeding issues that go more to the merits of the complaint. . . ." *Werbowsky*, 766 A.2d at 144. Accordingly, whether Plaintiff has adequately alleged futility of demand is "a preliminary issue that is discrete, that does not go to the merits of the underlying complaint, [and] that needs to be resolved *before* the court undertakes to consider the merits. . . ." *Id.* at 144 (emphasis added).

2. The Directors' Actions In The Second Circuit *Seidl* Litigation Do Not Excuse Demand

Plaintiff argues that responsive pleadings made in the Second Circuit *Seidl* litigation and the decision by the board of directors of the mutual fund at issue there (which is comprised of the same individuals as ACWMF's board members) to reject the demand made by the *Seidl* plaintiff indicates that ACWMF's board "are so committed to their stated antagonism to Plaintiff's claims that they cannot be expected to respond in good faith to a demand that those claims be pursued." (Opp. at 12.) This argument should be rejected because it simply is illogical and it relies on a misunderstanding of applicable law.

First, in the Second Circuit *Seidl* litigation, Judge Cote concluded that the pleadings by the board of directors of the different fund involved in that case did not demonstrate that demand was futile. Plaintiff has not provided any compelling reason why such pleadings should result in

3

a finding of demand futility here when they did not evidence futility in the case in which they actually were filed.

Second, with respect to the decision to refuse the *Seidl* plaintiff's subsequent demand, because Judge Cote concluded that board was able to consider a demand in good faith and within the ambit of the business judgment rule, a decision to reject the demand in and of itself cannot establish bad faith.[3] Indeed, even where claims made in a demand have merit, rejecting the demand does not establish bad faith because "[t]he purpose of the demand requirement is to 'affor[d] the directors an opportunity to exercise their reasonable business judgment and *waive* a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.'" *Werbowsky*, 766 A.2d at 134 (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95-97 (1991)) (emphasis added). Accordingly, Plaintiff's assertion that making a demand would "leave the innocent victims of … wrongdoing without a remedy" is irrelevant (Opp. at 13.); the victim on whose behalf Plaintiff asserts derivative claims is ACWMF, and the demand requirement exists so that ACWMF's board of directors has the opportunity to decide whether it is in the best interests of ACWMF to pursue a remedy.

3. The Duties Owed By Directors To Other Portfolio Funds Does Not Establish Futility Of Demand Under *Werbowsky*

Plaintiff argues that members the ACWMF board of directors cannot reasonably consider a demand because of the duties they owe to other portfolio funds. (Opp. at 13-14.) But as described in Defendants' initial suggestions, the central premise of Plaintiff's argument, that

---

[3] Moreover, the *Seidl* plaintiff's demand was rejected after this litigation was filed. Futility of demand must be established at the time of the filing of the lawsuit and cannot be based on such post-filing events. *See Lewis v. Graves*, 701 F.2d 245, 250 (2d Cir. 1983) ("[S]ince the futility of making the demand required by Rule 23.1 must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight, … post-complaint events *are not relevant*.") (internal quotation marks omitted and emphasis added). In the case cited by Plaintiff for the proposition that post-complaint facts may be considered, the court concluded that demand was futile because the litigation had been stayed while a special litigation committee decided which claims to pursue. *See In re American Int'l Group, Inc.*, 965 A.2d 763, 807-811 (Del. Ch. 2009).

4

service on the boards of multiple funds managed by the same adviser disqualifies directors from considering a demand, has been rejected by numerous courts considering Maryland law. (Suggestions in Support at 9-10.) Plaintiff vainly seeks to characterize the facts presented here as fundamentally different from those other cases by arguing that *In re Merrill Lynch Focus Twenty Funds Inv. Co. Act Litig.*, 218 F.R.D. 377 (E.D.N.Y. 2003), and *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005), are "remuneration" cases in which the courts rejected demand futility arguments "based *solely* on the fact that the fund directors received high compensation . . . ." (Opp. at 14 (emphasis in original).) Plaintiff's description is inaccurate. In *In re Merrill Lynch Focus Twenty Funds*, the court considered whether allegations that the directors served on 49 Merrill Lynch funds "*combined with* their large compensation packages" were sufficient to establish demand futility. *In re Merrill Lynch Focus Twenty Funds*, 218 F.R.D. at 381. It concluded that such allegations did not. Similarly, in *In re Franklin Mutual Funds*, the court held that demand was not excused where plaintiffs alleged "that the directors (1) were appointed by the investment advisors, (2) served on multiple boards [of funds managed by the same advisor], *and* (3) received substantial compensation." *In re Franklin Mut. Funds Litig.*, 388 F. Supp. 2d at 470 (applying *Werbowsky*) (emphasis added). In addition, the *In re Franklin Mutual Funds* plaintiffs alleged (as Plaintiff does here) that the directors were directly involved in the wrongdoing. *Id.*

The authorities cited by Plaintiff in support of his argument also are irrelevant and unpersuasive. The opinions, only one of which involved a derivative action, *Booth v. Robinson*, 55 Md. 419 (Md. 1881), establish only that conflicts of interest may arise when one party represents two parties to a transaction that are directly adverse. *E.g.*, *Wilken Square, LLP v. W.C. Pinkard & Co., Inc.*, No. 707, 2009 WL 4162004 (Md. Ct. Spec. App. Nov. 30, 2009)

5

("Absent the knowing consent of the parties to a real estate transaction, the broker's fiduciary relationship with his client precludes a 'dual agency,' that is, the same broker representing both sides in the transaction. This is so because, ordinarily, the interests of the parties on the two sides of such a transaction are *diametrically opposed*.") (emphasis added). Therefore, these cases are inapposite.

Most tellingly, Plaintiff does not attempt to distinguish Judge Cote's decision in the Second Circuit *Seidl* litigation in which she rejected an identical theory of potential conflicts of interest purportedly arising from possible recovery against the investment adviser. *Seidl*, 713 F. Supp. 2d at 261 ("Plaintiff fails to plead with sufficient particularity the harm that would befall the other funds if a lawsuit were brought on behalf of ACMF."). The *Seidl* holding is as applicable here as it was in the case before Judge Cote in New York.

Finally, Plaintiff argues that the cases cited by Defendants and *Strougo v. Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 783 (S.D.N.Y. 1997), "demonstrate the appropriateness of treating mutual funds differently from ordinary corporations with respect to demand futility." (Opp. at 15.) Plaintiff of course cannot cite any language from those opinions indicating that Maryland courts would apply a different standard from *Werbowsky* to investment companies or funds. Indeed the Second Circuit Court of Appeals has stated that "*Werbowsky* sets forth at length Maryland's standards for determining whether demand on a corporation's directors is excused. We see no reason to believe that Maryland would depart from those standards in the case of a registered investment company." *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 140 (2d Cir. 2004).

## B. The Demand Requirement Is Not Excused For Derivative RICO Causes of Action

Because the Complaint fails to state with particularity facts establishing futility of demand with respect to any of his causes of action, Plaintiff argues that at least his RICO claims should not be dismissed because he "is entitled to pursue his derivative RICO claims without first making a demand on the Board." (Opp. at 7-9.) Plaintiff's argument should be rejected because federal courts routinely look to state law to determine the parameters of the demand requirement in derivative actions asserting federal claims, including those asserting RICO causes of action. The cases Plaintiff cites to support this argument are, at best, inapposite.

Plaintiff argues that in *Daily Income Fund*, 464 U.S. 678 (1946), the Supreme Court "held that it was appropriate to allow mutual fund investors the benefit of vindicating their federal rights under the 1940 Act without first making a demand . . . ." (Opp. at 8 (emphasis added).) This assertion is misleading at best. In *Daily Income Fund*, the Supreme Court was interpreting a specific provision of the Investment Company Act, and held that demand was not required, not because of any fundamental right investors have to assert claims on behalf of a mutual fund without first making a demand, but because the claim *could not be brought by an investment company* and so the requirements imposed by a rule governing actions brought in the investment company's name could not apply. *Daily Income Fund*, 464 U.S. at 542. In *Kamen*, the Supreme Court held that "where a gap in the federal securities law must be abridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate *state* law into federal common law unless the particular state law in question is inconsistent with the policies underlying the federal statute." *Kamen*, 500 U.S. at 108 (emphasis in original). *Kamen* thus actually supports Defendants' arguments, because the Supreme Court

7

ultimately remanded with instructions for the lower court to determine whether the shareholder had sufficiently alleged demand futility under Maryland law. *Id.* at 109 n.10.

Because no provision of RICO discusses whether demand is required before a shareholder can bring a derivative action against a corporation, the Court must look to Maryland law, as the Supreme Court did in *Kamen*, to determine whether Plaintiff's Complaint sufficiently alleged demand futility. Plaintiff cites to general authority regarding the need to provide relief for injuries, but no authority for the holding that a derivative RICO action does not require demand. Plaintiff also fails to acknowledge that other federal courts presented with shareholder derivative actions asserting RICO claims have looked to state law to determine whether shareholders adequately alleged demand futility. *See*, *e.g.*, *Levine v. Prudential Bache Props., Inc.*, 855 F. Supp. 924, 940 (N.D. Ill. 1994) ("As to the futility of demand, Rule 23.1 requires plaintiffs to allege with particularity the reasons why no demand to bring this RICO action was made upon the general partners of the Summit Funds. Because the Funds were organized in Delaware, the court will look to Delaware law for the substantive rule governing demand futility.") (citing *Kamen*, 500 U.S. at 97-107). Indeed, the Ninth Circuit Court of Appeals held that a Texas corporation's shareholder's derivative RICO claims "must fail" because "the demand requirement in Texas is absolute" and the shareholder did not make a demand. *Albers v. Guthy-Renker*, 92 Fed. Appx. 497, 499-500 (9th Cir. 2004) (citations omitted).

## CONCLUSION

For the reasons set forth above and in their initial suggestions in support of their Motion to Dismiss, the Fund and the Independent Directors respectfully request that the Court grant their Motion to Dismiss Plaintiff's Verified Derivative and Class Action Complaint and dismiss Plaintiff's Complaint with prejudice.

8

Dated: October 17, 2011

Respectfully submitted,

BERKOWITZ OLIVER WILLIAMS
SHAW & EISENBRANDT LLP


By: /s/ Kurt D. Williams
    Kurt D. Williams  MO Bar # 36957
    Nick J. Kurt MO Bar # 52216
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone:  816-627-0215
    Facsimile:  816-561-1888
    Email:  kwilliams@berkowitzoliver.com

    And

    Steuart H. Thomsen (*pro hac vice*)
    SUTHERLAND ASBILL &
    BRENNAN LLP
    1275 Pennsylvania Avenue, NW
    Washington, DC 20004
    Telephone: 202-383-0166
    Facsimile:  202-637-3593
    Email: steuart.thomsen@sutherland.com

    Attorneys for Defendants Thomas A.
    Brown, Andrea C. Hall, Donald H. Pratt,
    Gale E. Sayers, M. Jeannine Strandjord,
    Timothy S. Webster, and Nominal
    Defendant American Century World
    Mutual Funds, Inc., doing business as
    American Century International
    Discovery Fund

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of October, 2011, the foregoing was electronically filed using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

        s/ Kurt D. Williams
        Attorneys for Defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, Timothy S. Webster, and Nominal Defendant American Century World Mutual Funds, Inc., doing business as American Century International Discovery Fund